465 S.E.2d 416

**STATE of West Virginia ex rel. Ronald Gene DANIEL, Petitioner Below, Appellant,**

v.

**Carl LEGURSKY, Warden, West Virginia Penitentiary, Respondent Below, Appellee.**

No. 22917.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 3, 1995.

Decided Nov. 17, 1995.

316

E. Kent Hellems, Gorman & Sheatsley, Beckley, for Appellant.

Kristen L. Keller, Chief Deputy Prosecuting Attorney, Beckley, for Appellee.

CLECKLEY, Justice:

Ronald Gene Daniel, the petitioner below and appellant herein, appeals the November 1, 1994, order of the Circuit Court of Raleigh County which denied his post-conviction omnibus habeas corpus petition. In January of 1989, the petitioner was sentenced to life imprisonment with a recommendation of mercy for a first-degree murder conviction and three to ten years for a malicious wounding conviction, such sentences to run consecutively. In *State v. Daniel*, 182 W.Va. 643, 391 S.E.2d 90 (1990), this Court affirmed his convictions on direct appeal.[1] The petitioner

---

1. We addressed a claim of ineffective assistance of counsel on direct appeal. *See* note 5, *infra.* Traditionally, ineffective assistance of counsel claims are not cognizable on direct appeal. We have urged counsel repeatedly to think of the consequences of raising this issue on direct appeal. Claims that an attorney was ineffective involve inquiries into motivation behind an attorney's trial strategies. *See State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). Without such facts trial counsel's alleged lapses or errors will be presumed tactical moves, flawed only in hindsight. What is more, in the event a defendant pursues his claim on direct appeal and it is rejected, our decision will be binding on the circuit court through the law of the case doctrine, "leaving [defendant] with the unenviable task of convincing the [circuit court] judge that

he should disregard our previous ruling." *U.S. v. South*, 28 F.3d 619, 629 (7th Cir.1994). That is why in *Miller* we suggested that a defendant who presents an ineffective assistance claim on direct appeal has little to gain and everything to lose. In this case, we refuse to consider on this habeas appeal issues that we have already dealt with on direct appeal.

If the parties have developed the record, however, this Court can elect to hear the issue of ineffective assistance on direct appeal. In future cases, counsel insistent on filing ineffective assistance claims on appeal should first bring the issue on as a motion for new trial on "other grounds" under Rule 33 of the West Virginia Rules of Criminal Procedure. Such a motion may be filed regardless of whether the bases of

raised numerous assignments of error in his habeas corpus petition, some of which were rejected by this Court on direct appeal. We will address the issue of ineffective assistance of counsel, as we find it is the petitioner's strongest claim. We find his remaining assignments of error are without merit.[2]

## I.

### FACTS AND PROCEDURAL BACKGROUND

The facts surrounding the petitioner's convictions are fully set forth in *State v. Daniel, supra.* However, in order to analyze the petitioner's ineffective assistance of counsel claim on habeas corpus, we will summarize the events leading to his convictions.

On the evening of July 8, 1988, the petitioner accompanied his friends, Lisa and Edward Burrell, to the Legends bar in Daniels, West Virginia. The trio had consumed some beer prior to arriving at the bar at approximately 11:30 p.m. While at Legends, the petitioner ran into an old friend, Jimmy Torrence. The two men drank beer and tequila and spent the evening talking. The Burrells left Legends before closing time, so the petitioner decided to ride home with Jimmy Torrence. They left the bar at closing time at approximately 3:30 a.m.

Before arriving at Legends, Jimmy Torrence had spent the evening driving around drinking alcohol and smoking marijuana with his younger brother Timmy and their friends, Bobby Goodson, Aaron Bolen, Cecil Miller, and Walter Dale Morgan. When Jimmy Torrence and Cecil Miller went into Legends, the other men stayed in the van listening to music.

As the petitioner and Jimmy Torrence left Legends, they were jumped and beaten by two men known as the "Patton brothers" who felt animosity toward Mr. Torrence. The fight only lasted approximately five minutes and the group of men went their own ways. During the altercation, the petitioner's eye was injured, his head was bleeding, and his partial denture plate was broken. He climbed into the passenger's seat of the van and Jimmy Torrence sat in the driver's seat.

Bobby Lane, who earlier had asked Jimmy Torrence for a ride home, and a woman he had met at the bar rode in the back of the van with the other men.[3] Mr. Lane testified he did not drink any alcohol that evening because he was planning to be a designated driver. He stated he had a "feeling" that made him want to get out of the van.[4] He further stated the petitioner told Mr. Morgan he should have helped him in the fight. He remembered the petitioner saying something to the effect of "what [a] friend it was for [Morgan] not to get out and help[.]" Mr. Lane and the woman got out of the van at Raleigh Motor Sales.

Jimmy Torrence continued driving home as the group listened to music. Cecil Miller was passed out on the floor of the van. The petitioner testified he became confused and disoriented apparently due to the combined effects of the alcohol he consumed and the injuries he sustained in the fight. He testified he did not know who was in the back of

the claim are evident in the trial record. Of course, it must be filed within ten days of the verdict or within such further time as may be within that period fixed by the trial court. Just as the circuit court has broad discretion in resolving a new trial matter, so, too, does it enjoy discretion whether to hold an evidentiary hearing on this motion.

2. In this appeal, the petitioner cites the following assignments of error: (1) ineffective assistance of counsel during trial; (2) the State's failure to provide exculpatory evidence before trial; (3) prosecutorial misconduct; (4) improper burden-shifting jury instructions; (5) the petitioner's absence during a critical point at trial; (6) his consecutive sentences violate the double jeopardy rule; (7) he was not apprised of the charges

against him when he waived his *Miranda* rights; and (8) cumulative error.

3. Mr. Lane could not remember the name of the woman he met at the bar and she was not called at trial. The woman was later identified as Carol Dotson Brammer. Ms. Brammer testified at the habeas corpus hearing.

4. Out of the presence of the jury, Mr. Lane stated the reason he felt uneasy in the van was because he had heard the petitioner was a suspect in his wife's death. The petitioner was indicted for the killing of his wife, Tammy Hensdale Daniel. However, the State moved to dismiss the indictment because of insufficient evidence linking the petitioner to the crime. Mrs. Daniel's body was never found.

the van, but he felt threatened by them. The petitioner became aware of his injuries and noticed that one eye was swollen shut. He testified he feared for his life. The petitioner pulled out his .25 caliber handgun, held the gun to Jimmy Torrence's head, and told him to take him to the State Police headquarters for help. He testified he believed the men in the back of the van were rushing toward him. The petitioner shouted at the men to stay back and fired warning shots toward the floor of the van. The petitioner was not aware that two shots struck Walter Dale Morgan in the chest fatally wounding him and a third shot pierced Cecil Miller's arm.

After the shots were fired, the passengers jumped out of the back of the van, except Mr. Miller who continued to lie on the floor of the van. The petitioner again held the gun to Jimmy Torrence's head and told him to take him to the State Police headquarters. Mr. Torrence stopped the van as it approached a police cruiser sitting at the side of the road and the petitioner was taken into custody.

At trial, the petitioner testified the events of the evening were unclear to him. He was aware he had been in a fight, but he was not sure with whom. He did not recognize Edward D. Patton at trial. The petitioner testified he had known Mr. Morgan for years and was his friend, but he had never met Mr. Miller. The petitioner explained the reason he fired the shots was because he feared for

his life. He claimed he never intended to kill anyone.

## II.

### INEFFECTIVE ASSISTANCE OF COUNSEL [5]

 The petitioner strives to persuade us that we should do what is rarely done— find that his rights under Section 14 of Article III of the West Virginia Constitution were denied in that he was a victim of his counsel's ineffective assistance at the trial level. Unless claims of ineffective assistance of counsel have substantial merit, this Court, historically, has taken a negative view toward the assertion of frivolous claims.[6] In *State v. Baker*, 169 W.Va. 357, 365, 287 S.E.2d 497, 502 (1982), we stated:

"A charge of ineffective assistance of counsel is not one to be made lightly. It is a serious charge which calls into question the integrity, ability and competence of a member of the bar. We suggest that counsel consider carefully the facts of a case before raising this issue, keeping the Code of Professional Responsibility readily in mind." (Footnote omitted).

The burden of persuasion placed on the petitioner is indeed a heavy one and, under our jurisprudence, we are prevented from reversing convictions on this ground unless two components are satisfied. To prevail on his ineffective assistance of counsel claim, the petitioner must show both deficient performance and prejudice; that is, the petitioner

---

**5.** In *State v. Daniel, supra,* we addressed the issue of ineffective assistance of counsel in regard to the petitioner's claim that trial counsel's decision to call Betty Kelly amounted to ineffective assistance:

"The [petitioner] contends that trial counsel's decision to put Betty Kelly on the witness stand was the equivalent of ineffective assistance of counsel. Betty Kelly's testimony was intended to impeach Sophia Police Chief Roush regarding the drugs found near Torrence's van and a conversation he had with Ms. Kelly prior to trial. Unfortunately for the [petitioner], Ms. Kelly was impeached at trial, with evidence being presented that she had forged her husband's name on a bond that would release Daniel from jail. Ms. Kelly also had a prior drug-related criminal record that was brought out upon cross-examination. Because of her lack of credibility, Daniel's appel-

late counsel argued that it was ineffective assistance of counsel for the trial attorney to put Ms. Kelly on the stand. We are not persuaded by this assertion and find no ineffective assistance of counsel." 182 W.Va. at 650, 391 S.E.2d at 97.

We find no reason to disturb our holding as it related to this particular issue. However, the petitioner raises much more substantial claims of ineffective assistance of counsel in his habeas corpus petition that warrant consideration.

**6.** The claims raised in this petition are by no means frivolous. To the contrary, we would have reversed the underlying conviction had the prejudice prong been satisfied. We take this opportunity to applaud and commend habeas counsel for an excellent job of representation.

must demonstrate: (1) that his counsel's performance fell below "an objective standard of reasonableness" and (2) that it is reasonably probable that "but for counsel's unprofessional errors the result of the proceedings would have been different." Syl. pt. 5, in part, *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995). In *Miller,* this Court recently set forth the standard of review applicable to claims of ineffective assistance of counsel. In Syllabus Points 5 and 6 of *Miller,* we stated:

"5. In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

"6. In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue."

An ineffective assistance of counsel claim presents a mixed question of law and fact; we review the circuit court's findings of historical fact for clear error and its legal conclusions *de novo.* This means that we review the ultimate legal claim of ineffective assistance of counsel *de novo* and the circuit court's findings of underlying predicate facts more deferentially. In reviewing these multiple claims, we consider the entire trial transcript along with the transcript of the habeas corpus hearing. *See Dobbs v. Zant,* 506 U.S. 357, 113 S.Ct. 835, 122 L.Ed.2d 103 (1993) (reviewing court must consider entire trial transcript when reviewing claim of ineffective assistance of counsel). Having thoroughly reviewed the record, we conclude that the petitioner's ineffective assistance claim must fail because he has not shown that he was prejudiced by the alleged errors of his counsel.

■ The fulcrum for any ineffective assistance of counsel claim is the adequacy of counsel's investigation. Although there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and judicial scrutiny of counsel's performance must be highly deferential, counsel must at a minimum conduct a reasonable investigation enabling him or her to make informed decisions about how best to represent criminal clients. *Wickline v. House,* 188 W.Va. 344, 424 S.E.2d 579 (1992) (per curiam); *State ex rel. Kidd v. Leverette,* 178 W.Va. 324, 359 S.E.2d 344 (1987). Thus, the presumption is simply inappropriate if counsel's strategic decisions are made after an inadequate investigation. *Wajda v. U.S.,* 64 F.3d 385, 387 (8th Cir. 1995). As suggested in *Strickland,* "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 691, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. Courts applying the *Strickland* standard have found no difficulty finding ineffective assistance of counsel where an attorney neither conducted a reasonable investigation nor demonstrated a strategic reason for failing to do so. *See Sanders v. Ratelle,* 21 F.3d 1446 (9th Cir.1994).

■ In determining whether counsel's conduct falls within the broad range of professionally acceptable conduct, this Court will not view counsel's conduct through the lens of hindsight. "[C]ourts are to avoid the use of hindsight to elevate a possible mistake into a deficiency of constitutional proportion." *Clanton v. Bair,* 826 F.2d 1354, 1358 (4th Cir.1987), *cert. denied,* 484 U.S. 1036, 108 S.Ct. 762, 98 L.Ed.2d 779 (1988). Rather, under the rule of contemporary assessment, an attorney's actions must be examined according to what was known and reasonable at the time the attorney made his or her choices.

■ To recapitulate, under *Strickland/Miller,* we must determine: (1) whether

the performance of counsel was so deficient that he or she was not functioning as "counsel" as guaranteed by Section 14 of Article III of the West Virginia Constitution and (2) whether counsel's performance prejudiced the defendant by depriving him or her of a fair trial. In determining whether counsel's performance was deficient, we apply an objective standard of reasonableness, indulging a strong presumption that a counsel's conduct falls within the wide range of reasonable professional standards. In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland/Miller* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.

In *United States v. Cronic*, 466 U.S. 648, 658, 104 S.Ct. 2039, 2046, 80 L.Ed.2d 657, 667 (1984), decided at the same time as *Strickland*, the Supreme Court noted that some types of ineffective assistance are so egregious that prejudice should be presumed because "the cost of litigating their effect in a particular case is unjustified." (Footnote omitted). *Cronic*'s exception to *Strickland*'s prejudice requirement is based not so much on timing (i.e., whether the conduct complained of occurred at a critical stage of the adversary proceedings), but on the nature of the attorney's misconduct. 466 U.S. at 659, 104 S.Ct. at 2047, 80 L.Ed.2d at 668 (presumption of prejudice occurs when there is a complete denial of counsel "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing"). *See also U.S. v. Swanson*, 943 F.2d 1070, 1075–76 (9th Cir.1991) (prejudice presumed when counsel effectively conceded defendant's guilt during closing argument).

 Of course, a defendant can only obtain reversal on ineffective assistance of counsel grounds if the error complained of occurred at a critical stage in the adversary proceedings. This is true because Section 14 of Article III of the West Virginia Constitution and the Sixth Amendment to the United States Constitution guarantee the right to counsel only at critical stages. *See, e.g., Kirby v. Illinois*, 406 U.S. 682, 690, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411, 418 (1972); *Mempa v. Rhay*, 389 U.S. 128, 134, 88 S.Ct.

254, 256, 19 L.Ed.2d 336, 340 (1967). It, therefore, follows that, if the stage is not critical, there can be no constitutional violation no matter how deficient counsel's performance. *See, e.g., Wainwright v. Torna*, 455 U.S. 586, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982) (per curiam); *U.S. v. Gordon*, 4 F.3d 1567 (10th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1236, 127 L.Ed.2d 579 (1994). In fact, in *State v. Watson*, 164 W.Va. 642, 652, 264 S.E.2d 628, 634 (1980), we emphasized that "any charge of ineffectiveness of trial counsel must ultimately relate to a matter which would have affected the jury decision." Of course, our prior decisions make it clear that under Section 14 of Article III of the West Virginia Constitution the right to effective assistance of counsel extends to both the sentencing phase of trial as well as to direct appeal. *See Carter v. Bordenkircher*, 159 W.Va. 717, 226 S.E.2d 711 (1976). *See also Teague v. Scott*, 60 F.3d 1167, 1170 (5th Cir.1995) (The Sixth Amendment right to counsel "applies both at trial and on direct appeal").

We begin by noting that, in many respects, this was a very close case on the merits. Without doubt, the petitioner fired the shots that killed Mr. Morgan and wounded Mr. Miller. However, the only evidence tending to show premeditation and deliberation was the testimony of Mr. Lane that, prior to the shooting, the petitioner appeared perturbed that Mr. Morgan failed to help him in the fight outside Legends. Otherwise, the majority of witnesses testified no arguments took place in the van prior to the petitioner's outbursts. Furthermore, portions of the petitioner's testimony were corroborated by witnesses at trial. This Court has some doubt whether this is a first degree murder case. Nevertheless,

"[i]t makes absolutely no difference whether we on the appellate bench as jurors would have voted to convict the defendant of a lesser-included offense or whether we would have thought there was some reasonable doubt. To the contrary, the question posed by *Jackson* [*v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ] is whether any rational jury could on the evidence presented think the defen-

**322**

dant premeditated and intentionally killed the victim. We do not find the evidence so weak as to render the verdict irrational." *State v. Guthrie*, 194 W.Va. 657, 670, 461 S.E.2d 163, 176 (1995).

 The petitioner is aware that most of the errors, when viewed in isolation, are insufficient to justify reversal and apparently for that reason he argues the cumulative effect of trial counsel's performance denied him a fair trial.[7] His specific claims are more fully discussed below. Based on the record, we agree that even trial counsel's "tactics" were questionable. Nevertheless, we do not find his actions at trial were so deficient as to be tantamount to ineffective assistance of counsel.[8]

 The events that took place following the petitioner's trial and convictions are the facts we find most important in our discussion of ineffective assistance of counsel. In assessing allegations that an attorney failed to investigate, we must determine whether counsel's decision to investigate or his determination that particular investigation is unnecessary was objectively reasonable. We remain aware that in order to eliminate hindsight's distorting effect, our assessment must proceed as an evaluation of counsel's conduct from his perspective at the time he decided to forego developing an issue. As explained below, we find the petitioner's trial attorney's failure to investigate and failure to request a hearing after receiving information that jury tampering took place prior to deliberations amounted to gross neglect. Nevertheless, we do not believe this error compels the granting of a new trial.

### A. *Jury Tampering Evidence*

The petitioner asserts trial counsel was ineffective for failing to request a hearing concerning improper juror contact.[9] Following the jury's verdict, it was discovered that one of the jurors was contacted during the course of the trial by Betty Kelly, a defense witness.[10] Prior to deliberations, Ms. Kelly called a juror twice in one evening and offered the juror's son a deal on a used car if the juror could do what she could to help the petitioner.

Upon learning of the jury tampering, trial counsel did not investigate the matter or request a hearing. Instead, he reported the incident to the trial court. The trial court interviewed the juror and determined no harm occurred. No record was made of this interaction, so we do not know what questions were asked of the juror. The petitioner did not learn of the incident until after the trial court's decision. The petitioner stated that trial counsel told his family he did not want to get the petitioner's hopes up until after the judge ruled.

At the habeas corpus hearing, new evidence had come to light on this issue that was not available to this Court on direct appeal. The juror testified at the habeas corpus hearing that the night before jury deliberations, she received two phone calls from Ms. Kelly trying to elicit help for the petitioner. After reaching the verdict, this juror told the other members of the jury panel about her conversations with Ms. Kelly. She then learned that another woman juror was also contacted by Ms. Kelly. The juror stated that she did not tell the trial

---

**7.** In making the requisite showing of prejudice, "a petitioner may demonstrate that the cumulative effect of counsel's individual acts or omissions was substantial enough to meet *Strickland*'s test." *Williams v. Washington*, 59 F.3d 673, 682 (7th Cir.1995).

**8.** Following the habeas corpus hearing, the circuit court concluded the actions "in question involved tactics and strategy" and found the petitioner's trial attorney acted "as a reasonably qualified defense attorney."

**9.** This Court addressed the issue of jury tampering on direct appeal, although it was raised in a different manner. In *Daniel, supra,* we declined

to adopt a rule that it was "per se reversible error for a witness to contact a juror in a party's behalf when the trial judge found no evidence of prejudice[.]" 182 W.Va. at 647, 391 S.E.2d at 94. This Court's focus was on the lack of record evidence supporting the claim that the petitioner was prejudiced by the juror contact. We were not asked to address the issue of ineffective assistance of counsel for failing to investigate the matter and request a hearing. Therefore, only the issue regarding ineffective assistance of counsel is currently before the Court.

**10.** See note 5, *supra,* for a summary of Ms. Kelly's testimony.

court of this second juror because he did not inquire about the other jurors. She further testified that she felt "set-up" by Ms. Kelly and the petitioner. When asked to explain, the juror stated that she learned of the petitioner's relationship with Ms. Kelly [11] and that she "felt like they had got together and said, hey, we'll just use her." The juror testified that she believed the petitioner was attempting to improperly influence her through Ms. Kelly. The juror finally stated that the petitioner's trial counsel did not take a statement from her regarding this matter. Furthermore, she could not recall having any detailed discussions with trial counsel.

The petitioner maintains that no reasonably prudent attorney would allow such a discussion to take place off the record and out of the presence of a defendant.[12] He contends that, had an adequate record been developed on this issue, he would have been granted a new trial in light of the fact the juror admitted she believed the petitioner was trying to improperly influence her through Ms. Kelly. Additionally, in the absence of a record, the trial court's ruling essentially was rendered unreviewable.

 When questioned about the failure to request a hearing upon receiving information of jury tampering, trial counsel stated he did not request a hearing because he feared the petitioner could be charged with jury tampering.[13] As we said in *Wickline v. House*, "[w]e find this reasoning incomprehensible in light of" the charges that the petitioner stood convicted. 188 WVa. at 348 n. 9, 424 S.E.2d at 583 n. 9. We can imagine no scenario excusing this failure. The possibility of a jury tampering charge of one convicted of first degree murder and malicious wounding could hardly be a justification for the failure to explore an issue that, if successful, would lead to the reversal of the convictions.[14] Common sense suggests that investigation into jury tampering charges could easily have produced a ground for reversal of the conviction. An attorney clearly is obligated to investigate all reasonable avenues that could result in reversal of his client's first degree murder conviction. *See State ex rel. Leach v. Hamilton*, 166 W.Va. 383, 280 S.E.2d 62, 65 (1980). Because counsel failed in this regard, his behavior was not objectively reasonable under *Strickland/Miller*. Nevertheless, we find the error was cured by the extensive hearing and development of these facts in the habeas corpus hearing, albeit six years later. When these circumstances appear, a case for harmless error is made.

 To be clear, under the specific facts of this case, we have no difficulty concluding

11. Apparently, the petitioner and Ms. Kelly had a romantic relationship around the time of trial.

12. The hearing/interview where the petitioner was neglected by counsel was one occurring after conviction but before sentencing. The judge conducted the hearing alone but apparently with advice and consent of trial counsel. After the hearing, the trial court concluded there was no prejudice or harm committed.

13. At the habeas corpus hearing, trial counsel stated:

"[W]hen I first became aware of ... [the jury tampering], one of the concerns I had was the potential for a criminal charge not only against Betty Kelly, but at the time my understanding was, and my recollection was, they spent a lot of time together. There was some thought and potentially thought that Mr. Daniel would have a charge himself because he was—he was contacting the jury through Betty Kelly, is what the fear I had was, and I was somewhat apprehensive that what I was doing was actually contacting the prosecutor and saying, prosecutor, my client has committed a crime. So, ethically, I had a kind of dilemma, if I got a hearing, you [the prosecuting attorney] were coming at the hearing, and I was fearful that your reaction was to charge Mr. Daniel with jury tampering, a criminal charge; and, therefore, I was actually opening up a criminal charge against my own defendant."

14. Clearly, trial counsel's fear of the petitioner being charged with jury tampering is unfounded. First, he never informed the petitioner of the incident prior to the trial judge's decision, so he had no way of knowing if the petitioner was linked to the juror contact. Furthermore, he did not interview Ms. Kelly to see if she discussed her actions with the petitioner. Second, he was dealing with a defendant who was sentenced to life imprisonment with a recommendation of mercy for a first degree murder conviction and three to ten years for a malicious wounding conviction. Any remote chance of receiving a charge for jury tampering was far outweighed by the possibility of receiving a mistrial due to the evidence that Ms. Kelly tried to influence at least two jurors.

that no reasonable attorney would have: (a) failed to investigate this confirmed incident of jury tampering and (b) failed to request a hearing to evaluate what prejudice it may have had on the petitioner and to develop the record. These omissions fall outside the range of professionally competent assistance. Counsel's representation at this hearing amounted in every respect to no representation at all, and this total absence of advocacy falls outside *Strickland/Miller*'s wide range of professionally competent assistance. However, we do not believe that the petitioner has demonstrated the kind of prejudice required under *Strickland/Miller*; and *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). In determining the test for prejudice, the Supreme Court in *Lockhart* stated "prejudice" is whether the result of the proceedings was fundamentally unfair or unreliable. Of course, the proceedings referred to was the trial itself and the sentencing phase. We must determine whether the evidence adduced at the habeas corpus hearing demonstrates the petitioner met his burden of proving a "breakdown of the adversarial process affected ... [his] *discrete trial rights*" because trial counsel neglected to explore whether one of the jurors was prejudiced, partially due to her belief the petitioner tried to "set her up." *Lockhart*, 506 U.S. at 379, 113 S.Ct. at 848, 122 L.Ed.2d at 196 (Stevens, J., dissenting). (Emphasis added).

We do not believe that each time a problem is presented to a trial court and an *ex parte in camera* interview is conducted that it involves a critical stage of the criminal proceedings. *See LaChappelle v. Moran*, 699 F.2d 560, 565 (1st Cir.1983) (*in camera* conference not a "stage" of trial where "judge sought to exercise his extraordinary powers to administer the trial in a just manner"). On a federal level, the claim raised on this issue might be foreclosed by *United States v. Gagnon*, 470 U.S. 522, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985). There, the Supreme Court considered a very similar *ex parte in*

*camera* meeting between a district court judge and a juror in which a juror was questioned about his impartiality. The Supreme Court rejected the argument that this meeting contravened the Constitution, stating: "[T]he mere occurrence of an *ex parte* conversation between a trial judge and a juror does not constitute a deprivation *of any constitutional right.* The defense has no constitutional right to be present at every interaction between a judge and a juror[.]" 470 U.S. at 526 105 S.Ct. at 1484, 84 L.Ed.2d at 490, *quoting Rushen v. Spain*, 464 U.S. 114, 125–26, 104 S.Ct. 453, 459, 78 L.Ed.2d 267, 277 (1983) (Stevens, J., concurring). (Emphasis added).[15]

The issue raised by the petitioner is slightly different. He does not insist on his counsel's right or even his right, for that matter, to be present. Rather, he asserts that his counsel dropped the ball in not requesting further proceedings to pinpoint any infirmities that may have been extraneously injected into his trial. To be sure, however, there are times after trial that the post-trial proceedings do constitute a critical stage. The Supreme Court's decision in *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), which held there is no constitutional right to post-conviction counsel on appeal from state habeas trial court judgment, did not limit the right to effective post-trial counsel, as distinct from post-conviction. We believe we should take a cautious approach in this case and assume, without deciding, that because a defendant is entitled to counsel under Section 14 of Article III in all such critical stages,[16] if he in no way waived his right to counsel, he is entitled to effective assistance of counsel in a post-trial proceeding where a juror is being interviewed by the trial court concerning extraneous prejudicial information and events that occurred during the trial. Proceeding from the assumption made above, we find that counsel's performance fell woefully below the objective stan-

---

15. The *Gagnon* Court rejected the defendant's claim under Rule 43 of the Federal Rules of Criminal Procedure because he had not objected to the *ex parte* meeting.

16. *See Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986).

dard of reasonableness that is required in criminal proceedings.[17]

A finding of unprofessional conduct, however, does not end our inquiry. In order to obtain relief under *Strickland/Miller*, it is not sufficient that a petitioner only point to his or her attorney's deficient performance. In addition, he or she must demonstrate that the complained of deficiency resulted in prejudice or, as discussed above, a "reasonable probability" that in the absence of error the result of the proceedings would have been different, *Strickland, supra*, and was fundamentally unfair or unreliable. *Lockhart, supra*.

■ This case is not a denial of counsel in which we presume prejudice, it is an instance in which appointed counsel performed inadequately and prejudice must be proved by the petitioner. In *Cronic*, the Supreme Court indicated that an attorney's representation could be presumed ineffective under the Sixth Amendment if, by failing to appear at a critical stage or otherwise, he or she failed to subject the prosecution's case to adversarial testing. 466 U.S. at 659, 104 S.Ct. at 2047, 80 L.Ed.2d at 668. To establish a violation under *Cronic*, a petitioner must demonstrate that he or she suffered the equivalent of a complete absence of counsel. We believe that the petitioner failed to identify how he was prejudiced by the failure of his counsel to request a full blown hearing on this matter at the time the issue was brought to the trial court's attention.

■ Assessments of prejudice are necessarily fact-intensive determinations peculiar to the circumstances of each case. A full blown hearing was conducted in the habeas corpus proceedings, and we find as a matter of law that counsel did an outstanding job in developing the record at that hearing. At the hearing for this post-conviction relief, the very evidence that would have been offered in a proceeding to set aside the verdict was considered and rejected by the trial court. Because the petitioner's burden of proof is the same had the issue been raised on a motion for a new trial or in the habeas proceeding, we do not see what effect the delay had on the outcome.[18] In other words, the petitioner eventually got his day in court and we are not told of any prejudice suffered by the petitioner that was proximately caused by the delay.[19] This conclusion does not mean that we condone trial counsel's failure to request a full blown hearing on this issue; we simply decline to hold that such conduct arose during a critical stage which would constitute a *per se* deficiency violative of Section 14 of Article III of the West Virginia Constitution.

**17.** The provisions of Section 14 of Article III are implicated even though counsel was not excluded from the interview, rather counsel chose to allow the judge the privacy of conducting a discrete interview. If this type of waiver occurs, it must come from the defendant and not from counsel.

**18.** At the time the petitioner's trial counsel found out about this matter, it is doubtful whether he could have filed a motion for a new trial on any grounds other than newly discovered evidence. While the record does not show one way or another, it is most probable that the ten day time period for filing post-conviction motions under Rule 33 of the West Virginia Rules of Criminal Procedure had expired. Jury tampering is usually not considered "newly discovered evidence." To fit the newly discovered evidence standard, the evidence must be admissible if a new trial was granted. Otherwise, the rule would more naturally refer to "newly discovered facts" or "newly discovered information." Thus, it is very likely that the only manner of proceeding would have been a motion based on newly discovered evidence or a writ of habeas corpus. The bur-

dens in both cases are identical. *See U.S. v. Smith*, 62 F.3d 641, 649 (4th Cir.1995) (suggesting that post-trial challenges to matters not appearing on the record are governed by the same standard whether raised in a motion for a new trial or on a habeas claim).

**19.** *Lockhart* makes clear that while the deficient performance prong of the *Strickland/Miller* test requires an assessment of counsel's performance from a perspective contemporaneous with the time of trial,

"the prejudice prong could be evaluated from a hindsight perspective. According to the Court, the use of a hindsight perspective in the prejudice evaluation did not have the potential to interfere with counsel's 'ardor and 'independence' like its use in the deficient performance assessment. Because the prejudice evaluation focuses only on the *impact* of counsel's deficient performance and not on counsel's professional judgment at the time of trial, it does not result in judicial 'second-guessing' of an attorney's work." I Franklin D. Cleckley, *Handbook on West Virginia Criminal Procedure* 7 (Supp.1995).

In sum, with respect to the prejudice prong of *Strickland/Miller*, we cannot find there was a reasonable probability that but for counsel's alleged errors the outcome of the petitioner's challenge to jury tampering would have been different.

### B. *Failure to Develop a Theory of Defense*

The petitioner faults his trial counsel for not capitalizing on the evidence at hand to develop a credible theory of the case. In *Miller*, we addressed this very issue:

> "Indeed, we agree with the defendant that it would be unusual for counsel to develop and rely upon self-defense at trial and then offer no instructions on the defense. Such a maneuver is indicative of the lack of a trial strategy and '[n]o competent defense attorney would go to trial without first formulating an overall strategy.' Welsh S. White, *Effective Assistance of Counsel in Capital Cases: The Evolving Standard of Care*, 1993 U.Ill.L.Rev. 323, 356. Effective trial counsel typically prepares for a criminal defense by asking questions such as: (1) What is the objective of the defense? (2) What is the trial strategy to reach that objective? (3) How does one implement that strategy? The record before us, however, does not conclusively show the lack of a trial strategy." 194 W.Va. at 15–16, 459 S.E.2d at 126–27. (Footnote omitted).

When questioned about his theory of the case during the habeas corpus hearing, trial counsel stated the defense "basically ... was kind of accidental as to being hit on the head and waking up disoriented and improperly reacting to the circumstances surrounding [the petitioner]" However, trial counsel failed to develop evidence which would support the petitioner's claim that a blackout occurred. The petitioner had a history of three D.U.I. charges, had undergone treatment for alcohol abuse, and was drunk on the evening the shooting took place. Furthermore, the petitioner informed trial counsel that he previously experienced similar blackouts while intoxicated. None of the evidence showing the petitioner's serious drinking problem was put before the jury.

Similarly, the petitioner contends that given the fact he consumed a large amount of alcohol prior to the shooting, trial counsel was ineffective for failing to submit a diminished capacity instruction to the jury. In fact, the record indicates that such instruction was prepared yet withdrawn by trial counsel apparently at the surprise of the trial court.

Contrary to the petitioner's claims on this appeal, trial counsel stated at the habeas corpus hearing that the petitioner rejected a defense of diminished capacity because it would likely have resulted in conviction. Trial counsel stated the petitioner "wanted to go for it all" and seek complete acquittal. Furthermore, the State asserts the petitioner's blackout claim was refuted by the trial testimony of the treating physician at the emergency room that the petitioner stated he did not lose consciousness that evening.

In *State v. Watson*, 164 W.Va. 642, 650, 264 S.E.2d 628, 633 (1980), this Court stated:

> "There is no precise formula guiding a determination of when the failure to raise an available defense will constitute ineffective assistance of counsel. The absence of clear standards may be unavoidable, since the strength of an available defense in each particular circumstance may vary as broadly as the factual occurrences that give rise to a criminal prosecution. Thus, a determination of ineffective assistance of counsel for failure to raise an available defense involves a case-by-case examination of the particular facts in order that the issues those facts fairly raise can be compared with the defenses actually presented by counsel. See Annot., Modern Status of Rule as to Test in Federal Court of Effective Representation by Counsel, 26 A.L.R.Fed. 218, § 10(a) (1976)."

It seems apparent that the habeas corpus court accepted counsel's version of what happened. The petitioner cannot expect counsel to properly investigate and present a defense when the petitioner changes his mind as to which defense to use at every turn in the case. In *Strickland*, the Supreme Court held that trial counsel's decisions may be based on information given to him or her by the petitioner:

"The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information.... In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions." 466 U.S. at 691, 104 S.Ct. at 2066, 80 L.Ed.2d at 695–96.

██ This, too, appears to be a close issue. We find the choices made by trial counsel were reasonable and were strategic considerations based upon information from the petitioner and were not made because trial counsel was unprepared or conducted no pretrial discovery. *Kimmelman v. Morrison,* 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986), is one of the few cases where the Supreme Court found ineffective assistance of counsel. In *Kimmelman,* the Supreme Court noted that defense counsel "failed to file a timely suppression motion, not due to trial strategy considerations, but because he was unaware of the search, and of the State's intention to introduce the ... evidence," due to the fact he had conducted no pretrial discovery. Syl. pt. 2(a). This case is different. Furthermore, trial counsel and the petitioner disagree as to the petitioner's desire to forego this defense. The circuit court at the habeas hearing found against the petitioner on this and other issues, and we have no basis to reverse that finding. In cases where there is a conflict of evidence between defense counsel and the defendant, the circuit court's findings will usually be upheld. I Franklin D. Cleckley, *Handbook on West Virginia Criminal Procedure* 53 (2nd ed. 1994).

Finally, based on the record evidence, we do not find the trial attorney's tactics were so deficient as to constitute ineffective assistance of counsel. Although no evidence was presented regarding the petitioner's history of alcohol problems, the jury was aware that he and his friends had consumed large quantities of alcohol throughout the evening prior to the shooting. Furthermore, we agree with the State that the petitioner's "black out" claim was essentially refuted by the evidence at trial, rendering this theory of the case suspect.

### C. Failure to Effectively Cross–Examine Witnesses

The petitioner also contends his trial counsel was ineffective in his cross-examination of witnesses. We will focus on the cross-examination of one of the State's key witnesses— Jimmy Torrence. The petitioner claims that instead of attempting to impeach the credibility of Mr. Torrence through his criminal record, trial counsel should have focused upon the aspects of Mr. Torrence's statement which supported the defense. In Mr. Torrence's eleven-page statement given to the police, he stated there was no argument between Mr. Morgan and the petitioner; the petitioner pulled the gun and asked him to drive to the police station before the shots were fired; and the people in the back of the van did move forward before the shooting began. During the habeas corpus hearing, defense counsel agreed this testimony was exculpatory evidence. Defense counsel was not provided a copy of Mr. Torrence's statement prior to trial. However, he was afforded the opportunity to review the statement during a fifteen-minute break following Mr. Torrence's direct testimony.[20]

The State responds that trial counsel effectively cross-examined Mr. Torrence as to his prior convictions. Furthermore, trial counsel stated at the habeas corpus hearing that he elicited testimony from Mr. Torrence showing he was so intoxicated that he was not sure what happened the evening of the shooting.

██ However, the State does not articulate nor does this Court find a reason that necessitates the impeachment of Mr. Tor-

---

20. The petitioner further contends defense counsel was ineffective in his cross-examination of Timmy Torrence. However, a review of the evidence shows that Timmy Torrence's testimony was not particularly damaging to the defense or helpful to the State's case.

rence. His testimony was not damaging to the defense. The petitioner admitted nearly to everything testified to by Mr. Torrence. We agree that a better trial tactic would have been to elicit the available exculpatory evidence from Mr. Torrence to support the petitioner's claim in lieu of trying to impeach him outright; nevertheless, as we stated earlier, this Court has the benefit of sifting through all the testimony elicited at trial on our review of the petitioner's claims—a luxury not shared by trial counsel in the heat of battle. The method and scope of cross-examination "is a paradigm of the type of tactical decision that [ordinarily] cannot be challenged as evidence of ineffective assistance of counsel." *Hutchins v. Garrison*, 724 F.2d 1425, 1436 (4th Cir.1983), *cert. denied*, 464 U.S. 1065, 104 S.Ct. 750, 79 L.Ed.2d 207 (1984). In *Burger v. Kemp*, 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987), counsel failed to introduce any evidence of mitigation at the sentencing phase of a capital case. The Supreme Court, while acknowledging that the evidence would have been admissible, found no ineffective assistance of counsel. Instead, the Supreme Court accorded substantial deference to trial counsel saying that he had the experience in criminal cases to make the judgment as to how the jury might view introduction of this evidence. The Supreme Court concluded that the petitioner failed to overcome the presumption that, under the circumstances, the challenged action might be considered "sound trial strategy." We do not find the trial counsel's cross-examination of Mr. Torrence was unreasonable or inadequate based on all the information available to him at the time.

■ Indeed, it could be argued that trial counsel pursued a clearly defined, strategic approach which was far more effective than quibbling with Mr. Torrence regarding his pretrial statement. This strategic choice very well may have avoided a challenge to the accuracy of some of the information given by Mr. Torrence that substantiated the facts given by the defense. This conceivably was a decent strategy; the jury just did not find it helpful enough to acquit. "A decision regarding trial tactics cannot be the basis for a claim of ineffective assistance of counsel unless counsel's tactics are shown to be 'so ill

chosen that it permeates the entire trial with obvious unfairness.'" *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir.1995), *quoting Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983).

### D. *Failure to Call a Material Witness*

The petitioner argues his trial counsel was ineffective for failing to call a material witness, Carol Dotson Brammer, at trial. Ms. Brammer was the woman who accompanied Bobby Lane in the van. The petitioner contends Mr. Lane's testimony is the only evidence that could be used to show premeditation and deliberation. Mr. Lane testified that the petitioner and the decedent, Mr. Morgan, had a discussion which lead him to believe the petitioner thought Mr. Morgan should have helped him and Mr. Torrence fight the Patton brothers. It is clear from the testimony at the habeas corpus hearing that Ms. Brammer would have contradicted Mr. Lane's testimony.

Ms. Brammer stated that she and Mr. Lane had been drinking throughout the evening, which directly challenged his claim he was not drinking on the night of the shooting. Furthermore, she stated that she observed no arguments or even discussions concerning the fight when they were in the van. She testified the only discussion that took place in the van concerned the volume of the radio. Had this evidence been before the jury, the petitioner argues he never would have been convicted of first degree murder.

The petitioner contends that had trial counsel been diligent in locating witnesses, Ms. Brammer could have been called at trial. Instead, he asserts trial counsel only relied upon the petitioner's family to secure the names of witnesses.

■ The petitioner is correct in his legal assessment that the failure to present critical evidence could be the basis for a successful ineffective assistance of counsel claim. In *State ex rel. Leach v. Hamilton, supra*, we suggested that a criminal defense attorney might be ineffective if he or she failed to present advantageous evidence that could affect a jury's verdict. Our cases also demonstrate that where the failure to call a

witness is not due to dereliction on the part of counsel, there is no ineffective assistance. *See generally State v. Spence,* 182 W.Va. 472, 388 S.E.2d 498 (1989); *State v. Hatfield,* 169 W.Va. 191, 286 S.E.2d 402 (1982). Our review of the record does not reflect that the petitioner's trial attorney was derelict in his attempts to locate Ms. Brammer. The fact that no one knew her name or knew much about her made Ms. Brammer a very difficult witness to locate. Trial counsel did enlist the help of the petitioner's family because they were familiar with people in the area. Counsel also had the help of an investigator who was unsuccessful in his attempts to locate Ms. Brammer. Given these circumstances, we do not fault trial counsel for the failure to call Ms. Brammer at trial. The petitioner was fortunate—if not extremely lucky—to locate her to obtain her testimony at the habeas corpus hearing. Once an attorney's conduct is shown to be objectively reasonable, it becomes unnecessary to conduct a further inquiry into the alleged shortcomings because we use an objective standard to evaluate counsel's performance. *Strickland,* 466 U.S. at 700, 104 S.Ct. at 2071, 80 L.Ed.2d at 702.

## III.

### CONCLUSION

For the foregoing reasons, we find the petitioner did not suffer ineffective assistance of counsel. Accordingly, the order of the Circuit Court of Raleigh County is affirmed.

Affirmed.