**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

Steven Don Barker,
Petitioner Below, Petitioner

**v.)  No. 23-77** (Harrison County 21-C-157-2)

Shelby Searls, Superintendent,
Huttonsville Correctional Center,
Respondent Below, Respondent

## MEMORANDUM DECISION

Petitioner Steven Don Barker appeals the Circuit Court of Harrison County's January 11, 2023, order denying his amended petition for a writ of habeas corpus.[1] Here, the petitioner argues that the circuit court erred in finding that his trial counsel was not ineffective and that the jury instructions used at his trial were not constitutionally flawed. Upon our review, finding no substantial question of law and no prejudicial error, we determine oral argument is unnecessary and that a memorandum decision is appropriate. *See* W. Va. R. App. P. 21(c).

In January 2016, the petitioner was indicted by a Harrison County Grand Jury on four counts of sexual abuse by a parent, guardian, and custodian and three counts of third-degree sexual assault. The subject victim of all counts was the petitioner's minor stepdaughter. Following a jury trial, the petitioner was convicted of all counts and sentenced to an effective term of eleven to twenty-five years in prison. The petitioner filed a direct appeal with this Court, which affirmed the circuit court's order. *See State v. Barker*, No. 16-1074, 2017 WL 4772885 (W. Va. Oct. 23, 2017) (memorandum decision).

In July 2021, the petitioner, self-represented, filed a petition for a writ of habeas corpus. The petitioner was appointed counsel, and counsel filed an amended petition in August 2022. Relevant to this appeal, the petitioner raised grounds for relief related to ineffective assistance of trial counsel and incorrect jury instructions. Specifically, the petitioner argued that his trial counsel provided ineffective assistance when he failed to conduct a proper investigation, interview potential witnesses, prepare the petitioner for trial, or provide him with copies of discovery. According to the petitioner, trial counsel failed to interview Anthony Jackson, the victim's boyfriend, who provided the police with a statement prior to the trial which contradicted the victim's story. The petitioner argued that trial counsel could have used Mr. Jackson's statement to attack the victim's credibility. The petitioner also argued that trial counsel failed to investigate alibi witnesses such as Larry Policano, the employer of the victim's mother, whose testimony

---

[1] The petitioner appears by counsel Jeffrey D. Van Volkenburg. The respondent appears by Attorney General Patrick Morrisey and Deputy Attorney General Andrea Nease Proper.

would have been pertinent because the victim alleged that the abuse occurred while the petitioner babysat her during her mother's shift at work. The petitioner also argued that other witnesses, such as his mother, could have given relevant testimony. In addition to his claim of ineffective assistance of counsel, the petitioner argued that the jury instructions were improper and shifted the burden of proof to the petitioner to demonstrate his innocence because they provided that an acquittal could only be obtained "if the jury and each member of the jury has a reasonable doubt of the truth of the charge as to any one or more of these elements . . . ." According to petitioner, this instruction essentially prevented a hung jury.

The circuit court held an omnibus evidentiary hearing on November 4, 2022. The petitioner presented the testimony of Mr. Policano, who testified that during the relevant time period, he had hired the victim's mother to clean his salon one day per week. Mr. Policano stated that he saw the petitioner accompany the mother and help her clean on some occasions, though Mr. Policano could not say "how many days, how many hours, or how many times [the petitioner] showed up." Mr. Policano stated that neither trial counsel nor any investigators ever contacted him regarding the charges against the petitioner.

Next, the petitioner's mother, Teresa Binegar, testified that she advised trial counsel that she wanted to testify at the petitioner's trial but was not called as a witness. Ms. Binegar stated that she wanted the opportunity to speak to the fact that she knew of another minor girl who had plans to make allegations of sexual abuse against the petitioner at the same time as the victim but ultimately chose not to because "she wasn't going to say something about someone that wasn't true." Ms. Binegar testified she believed the information "could have" helped the petitioner's defense. Ms. Binegar further testified that overall, she was unsatisfied with trial counsel's representation and that he did not bring up relevant information. However, when asked to identify specific information, Ms. Binegar only stated "I mean, there was a lot. I just can't remember. It's been so far back."

The petitioner testified that he did not meet trial counsel until four days prior to trial and that he never received written communication or phone calls from trial counsel. The petitioner stated that at the meeting prior to trial, trial counsel did not discuss his investigation into the case or any trial strategy. Further, he claimed trial counsel did not provide the petitioner with any discovery prior to trial, and the petitioner did not become aware of Mr. Jackson's statement until after the trial was over. On cross-examination, the petitioner admitted that he had met trial counsel at his bond hearing but claimed that he did not see him again until four days prior to trial. He argued that, as such, trial counsel's lack of communication led to a failure to adequately prepare him for trial. The petitioner also admitted that although he had asked trial counsel to call his mother and grandmother as witnesses, they did not live in the home at the time of the alleged abuse and he had "no clue" what they could testify to.

Trial counsel testified that he visited the petitioner prior to trial at least two to three times, if not more. Trial counsel stated that he reviewed discovery with the petitioner but noted that he left the decision to the petitioner as to whether he wanted to keep a copy because jail was "not the greatest place to be accused of these types of charges." Trial counsel's strategy was to discredit the victim's testimony, as sexual abuse cases with delayed disclosures often come down to "his word versus hers." Trial counsel stated that the petitioner provided him with no potential alibi

witnesses, and trial counsel was unaware of Mr. Policano's existence. However, trial counsel stated that Mr. Policano's habeas testimony was not inconsistent with the victim's trial testimony that the petitioner abused her while her mother was at work. According to trial counsel, the mother testified that she had another job apart from her employment with Mr. Policano. Indeed, in speaking with the petitioner and Ms. Binegar, trial counsel's understanding was that the petitioner was unemployed and stayed home to care for the children.

Likewise, trial counsel stated that although he did not interview Mr. Jackson, Mr. Jackson's statement did not significantly contradict the victim's statements or testimony. For example, Mr. Jackson stated that the victim told him of two instances of sexual abuse, one in which the petitioner digitally penetrated her and one in which the two had sexual intercourse. In contrast, the victim testified that in the first instance the petitioner digitally penetrated her and they had sexual intercourse, in addition to having intercourse on two other occasions. Trial counsel stated that he was not concerned with these inconsistencies and, in fact, would have been concerned about coaching had the victim's reports of abuse been identical each time. In his opinion, "minor differences honestly lend some credibility given my knowledge of trauma responses."

By order dated January 11, 2023, the circuit court denied the petitioner habeas relief. The circuit court found that the petitioner failed to establish any grounds to support his claim that trial counsel was ineffective. Specifically, the circuit court found that trial counsel testified that he met with the petitioner on at least two or three occasions, reviewed discovery with the petitioner, discussed with the petitioner that his mother did not have any first-hand knowledge of the abuse, and also testified that the petitioner failed to provide him with the names of any alibi witnesses or other pertinent information to investigate. The circuit court also noted that Mr. Policano testified that he did not know when the petitioner was at work with the victim's mother, and that Ms. Binegar testified that she could not remember what things she believed trial counsel should have brought up at trial. After summarizing the testimony provided at the omnibus hearing, the circuit court further found that, even assuming that counsel's performance was deficient, the petitioner failed to show that in the absence of any deficiency, the result would have been different.

The circuit court also found that the petitioner failed to establish any error in giving the complained-of jury instructions, let alone any facts or law that would rise to the level of constitutional deprivation. According to the circuit court, the petitioner ignored other portions of the instructions that clearly alerted the jury to their individual responsibility, including "[i]f there is one Juror who has a reasonable doubt in his or her mind as to the Defendant's guilt, then it is the duty of such Juror not to surrender his or her own convictions merely because other members of the jury disagree." In sum, the circuit court found no meritorious grounds for relief and denied the petitioner's habeas petition. The petitioner now appeals.

When considering the appeal of a circuit court's habeas order, we review the final disposition for abuse of discretion and factual findings for clear error; questions of law are considered de novo. Syl. Pt. 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006). On appeal, the petitioner first argues that his counsel provided ineffective assistance. According to the petitioner, his counsel was ineffective for failing to conduct an adequate investigation into potential witnesses and for failing to interview critical witnesses, such as Mr. Jackson, Mr. Policano, and Ms. Binegar, who knew potentially exculpatory information. The petitioner avers

3

that Mr. Jackson's statement, for example, would have been helpful because his prior interview with law enforcement demonstrated that the victim's testimony at trial was inconsistent with what she had previously told Mr. Jackson. The petitioner contends this information would have been especially critical given that trial counsel's strategy at trial was to discredit the victim's testimony, and Mr. Jackson's potential testimony would have been material to the petitioner's defense in light of the lack of physical evidence, the length of time between the alleged abuse and the allegations, and the questionable circumstances surrounding the victim's disclosure. Simply put, the petitioner claims that Mr. Jackson's statement "would have put the trial in a different light and provided evidence for an acquittal due to the variance of story."

The petitioner further claims that Mr. Policano's statement would have provided trial counsel with evidence that the petitioner had accompanied the victim's mother to work on occasions and, therefore, was not always at home caring for the victim as alleged. Trial counsel failed to pursue this lead and failed to produce any evidence at trial that the petitioner may not have been with the victim at the times the alleged abused occurred. Moreover, the petitioner argues that trial counsel did not present Ms. Binegar as a witness even though Ms. Binegar had information that she believed would be helpful to the petitioner's case, including information about false accusations against the petitioner by another young girl.

We find these arguments to be without merit. To establish a claim of ineffective assistance of counsel, the petitioner must prove: "(1) [c]ounsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Syl. Pt. 5, in part, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). "[T]he test for prejudice . . . is whether the result of the proceedings was fundamentally unfair or unreliable." *Daniel v. Legursky*, 195 W. Va. 314, 324, 465 S.E.2d 416, 426 (1995) (citing *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)). And "[f]ailure to meet the burden of proof imposed by either part of the *Strickland/Miller* test is fatal to a habeas petitioner's claim." *State ex rel. Vernatter v. Warden*, 207 W. Va. 11, 17, 528 S.E.2d 207, 213 (1999) (citing *Legursky*, 195 W. Va. at 321, 465 S.E.2d at 423).

We are unpersuaded by the petitioner's argument that trial counsel's failure to interview either Mr. Jackson or Mr. Policano amounted to ineffective assistance of counsel. The petitioner cannot demonstrate that his counsel's performance was deficient or, even if it had been, that the result of the proceedings would have been different had trial counsel interviewed these potential witnesses and ultimately called them to testify. At the omnibus hearing, trial counsel testified that he did not pursue Mr. Jackson as a witness because he did not find the inconsistencies between Mr. Jackson's statement and the victim's testimony to be of concern given the nature of trauma responses. In fact, trial counsel testified that had the victim's statements been identical, he would have been concerned about her testimony being coached. Trial counsel also testified that he did not feel that Mr. Jackson's testimony would have been beneficial and, rather, could have been potentially harmful. Importantly, the petitioner did not call Mr. Jackson at his omnibus hearing and cannot identify what Mr. Jackson ultimately would have testified to at trial; however, even assuming that Mr. Jackson would have testified exactly as set forth in his statement to police, the jury could have viewed his statements as corroborating, rather than disputing the victim's

4

testimony. As such, the petitioner cannot prove that the outcome of his trial would have been different had his counsel interviewed Mr. Jackson and called him as a witness.

Likewise, the petitioner fails to establish that Mr. Policano's testimony would have changed the outcome of his trial. While the petitioner claims that Mr. Policano's testimony could have demonstrated that he was not with the victim during the times the alleged abuse occurred, Mr. Policano's testimony at the omnibus hearing demonstrated that he could not have testified to the specific dates or times that the petitioner accompanied the victim's mother to Mr. Policano's salon. Moreover, trial counsel testified at the omnibus hearing that the mother had other employment, demonstrating that the abuse could have occurred while she was working outside of Mr. Policano's salon. In sum, Mr. Policano's potential testimony would not have been inconsistent with the evidence of the petitioner's guilt, and the petitioner cannot establish that his testimony at trial would have changed the result of the petitioner's conviction.

The petitioner also fails to establish that trial counsel was ineffective in not calling Ms. Binegar as a witness. The testimony from the omnibus hearing clearly established that Ms. Binegar had no personal knowledge of the abuse, and the only information she planned to testify to constituted inadmissible hearsay. Moreover, the petitioner also testified that he had "no clue" what Ms. Binegar could have testified to. Accordingly, the petitioner failed to establish that had trial counsel called Ms. Binegar to testify at trial that the result would have been different. Given the foregoing, the petitioner's failure to demonstrate that he was prejudiced by his trial counsel's failure to interview and ultimately call Mr. Jackson, Mr. Policano, and Ms. Binegar as trial witnesses is fatal to this aspect of his ineffective assistance of counsel claim.

To the extent that the petitioner claims that his trial counsel was ineffective for failing to meet with him, provide him with discovery, or talk to him about trial strategy, we note that trial counsel disputed each of these allegations during his testimony at the omnibus hearing. Specifically, trial counsel testified that he met with the petitioner on more than one occasion, discussed trial strategy, and reviewed discovery with him. Ultimately, the circuit court found his testimony to be persuasive and credible, and we decline to disturb credibility determinations on appeal. *See Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). Given the foregoing, we conclude that the circuit court's findings are adequately supported by the record, and the petitioner has failed to satisfy his burden of demonstrating that his counsel's performance was deficient or that absent such deficiency, the result of his trial would have been different.

The petitioner next assigns as error the circuit court's failure to find that the jury instructions at his trial were constitutionally flawed. The petitioner admits that he did not object to the form of the instructions. He claims, however, that the instructions given to the jury improperly shifted the burden of proof to the petitioner and contributed to his conviction because they provided that "if the jury *and each member of the jury* has a reasonable doubt to the truth of the charge as to any one or more of these elements . . . you shall find the Defendant, Steven Don Barker, not guilty." (Emphasis added). The petitioner contends that the message conveyed by the instructions was that a juror's reasonable doubt was inconsequential absent agreement from the other jurors to

acquit the petitioner and, as such, deprived him of the possibility of the jury being hung and unable to convict him.

"[I]n West Virginia criminal cases[,] the sole bases for attacking an unobjected to jury charge are plain error and/or ineffective assistance of counsel." *Miller*, 194 W. Va. at 17, n.23, 459 S.E.2d at 128, n.23. But,

> [a]lthough this Court may . . . notice plain error in the giving of an erroneous instruction (in the absence of a proper and timely objection at trial), this Court will not ordinarily recognize plain error under such circumstances, even of constitutional magnitude, where the giving of the erroneous instruction did not substantially impair the truth-finding function of the trial.

*State v. Lyon*, 250 W. Va. 90, ---, 902 S.E.2d 422, 431 (2024) (citing Syl. Pt. 2, *State v. Hutchinson*, 176 W. Va. 172, 342 S.E.2d 138 (1986)). To establish plain error, there must be "(1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Miller*, 194 W. Va. at 7, 459 S.E.2d at 118, Syl. Pt. 7, in part. Finally, "jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal." *Lyon*, 250 W. Va. at ---, 902 S.E.2d at 429 (citations omitted).

As noted above, the petitioner failed to object at trial to the proposed jury instructions. But what is more, the record shows that during the discussion of the jury instructions between the trial court and the parties, the petitioner's counsel was asked multiple times whether he had any objection to withdrawing his proposed instructions and utilizing the State's instructions. Counsel clearly stated that he had no objections or concerns. Accordingly, given the petitioner's approval of the State's proposed jury instructions, we conclude that the petitioner waived the right to have the jury instructed differently. *Id.* at ---, 902 S.E.2d at 431 (finding that the defendant waived his right to have the jury instructed differently where he stated that he had no objection to the proposed instructions on no less than three occasions).

Furthermore, the instruction to the jury was correct. The Sixth Amendment to the United States Constitution and this State's Rules of Criminal Procedure require that a verdict be unanimous. *See State v. Jeremy S.*, 243 W. Va. 523, 531, 847 S.E.2d 125, 133 (2020) (noting that Rule 31(d) of the West Virginia Rules of Criminal Procedure pertaining to polling the jury "ensure[s] that the verdict is unanimous, as required by the Sixth Amendment to the United States Constitution and our Rules of Criminal Procedure") (citing *Ramos v. Louisiana*, 590 U.S. 83 (2020)); W. Va. R. Crim. P. 31(a) ("The verdict shall be unanimous.") So, the challenged portion of the jury instructions is a correct statement of the law, and contrary to the petitioner's claims, there is no right to a hung jury. *See United States v. Sawyers*, 423 F.2d 1335, 1341 (4th Cir. 1970) ("A defendant has no 'right' to either an irrational verdict or a hung jury."). Furthermore, we find that the truth-finding function of the jury was not impaired. The trial court specifically instructed the jury that "the law presumes a defendant to be innocent of crime"; "[t]he burden is always upon the prosecution to prove guilt beyond a reasonable doubt"; and that "[t]his burden never shifts to a Defendant for the law never imposes upon a Defendant, in a criminal case, the burden or duty of

6

calling any witnesses or producing any evidence." Moreover, the court instructed that "[i]f the jury views the evidence in the case as reasonably permitting either of two conclusions, one of innocence, the other of guilt, the jury should, of course, adopt the conclusion of innocence." So, taking the instructions as a whole, it is clear that the jury was not misled as to which party bore the burden of proof. Accordingly, even if the petitioner had not waived his right to challenge the jury instructions, he has nevertheless failed to show that error, much less plain error, resulted.

For the reasons stated above, this Court affirms the January 11, 2023, final order of the Circuit Court of Harrison County.

Affirmed.

**ISSUED:** October 22, 2024

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn