# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Gary Stanley,**
**Petitioner Below, Petitioner**

**FILED**

April 10, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 13-1095** (Kanawha County 06-MISC-311)

**Mark Williamson, Warden,**
**Denmar Correctional Center,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Gary Stanley, by counsel Barron M. Helgoe, appeals the order of the Circuit Court of Kanawha County denying his petition for writ of habeas corpus. Respondent, Mark Williamson, Warden, Denmar Correctional Center, by counsel Derek A. Knopp, filed a response, to which petitioner replied. Petitioner argues that he received ineffective assistance of counsel when he entered a guilty plea to voluntary manslaughter and kidnapping.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

This appeal stems from the circuit court's denial of petitioner's habeas corpus petition following an August 13, 2013, omnibus evidentiary hearing.[1] Petitioner's convictions stem from an indictment returned in 2003, charging him with first degree murder and kidnapping. Petitioner was alleged to have participated in the killing of his roommate, Deran Mazujian, in Dunbar, West Virginia. According to the record, one of petitioner's co-defendants, Ulysses Anthony Bellamy, stated that he and another co-defendant, Michael Varnado, began beating the victim in the victim's bedroom. Bellamy waited with the victim while petitioner traveled to Walmart to purchase bullets.[2] When petitioner returned with the bullets, he beat the victim, and Bellamy shot

---

[1] As petitioner notes, this is the second time that this Court has addressed petitioner's request for habeas relief. Petitioner filed his first habeas petition pro se with the circuit court in 2006, which was denied by order entered on January 12, 2007. On appeal, this Court remanded the matter to the circuit court by order entered on July 27, 2007, on the issue of ineffective assistance of counsel. After numerous changes of petitioner's habeas counsel, an amended habeas petition was filed on May 20, 2013. The circuit court held an omnibus hearing on August 13, 2013, and denied the petition by order entered on September 17, 2013.

1

the victim through a pillow. The victim's body was wrapped in a blanket, placed in a box, and dumped over a hillside near Wertz Avenue in Charleston. The autopsy revealed that the victim died from multiple blunt force injuries to the head and a gunshot wound to the face.

Petitioner ultimately reached a plea agreement with the State.[3] The non-binding agreement allowed petitioner to plead guilty to voluntary manslaughter and kidnapping. According to the agreement, the State would not oppose a sentence of life with mercy for kidnapping; would defer to the circuit court on the appropriate sentence for voluntary manslaughter; but would reserve the right to argue that the two sentences run consecutively. Importantly, the State indicated on the record before the circuit court that both parties were aware that sentencing was in the sole discretion of the circuit court and that the parties' recommendations were not binding upon the court.

The circuit court sentenced petitioner to a determinate term of fifteen years for voluntary manslaughter and a term of life with mercy for kidnapping. The circuit court ordered that the sentences be served consecutively.

In his habeas petition to the circuit court and on appeal of the denial thereof to this Court, petitioner makes the same argument -- that his guilty plea was not entered knowingly, voluntarily, or intelligently because of inaccurate advice by his plea counsel. Petitioner contends that his counsel told him and his family that he would only serve ten years in prison with regard to the kidnapping and a term of only three to fifteen years for voluntary manslaughter, and that the sentences would run concurrently. Plea counsel disputed petitioner's account and testified at the omnibus hearing that he would not have made promises to petitioner regarding petitioner's sentence. Plea counsel testified that he would have told petitioner that he would not anticipate petitioner receiving life without mercy, but would not have stated anything further with respect to the maximum sentence.

In the habeas proceeding, the circuit court found that the record from the plea hearing reflected that petitioner was properly questioned in all respects regarding his understanding of the rights he was waiving by entering a guilty plea, the terms of the agreement, and that the court was not bound by any sentencing recommendations or arguments of the parties. The circuit court denied petitioner's habeas petition by order entered September 17, 2013, and this appeal followed.

This Court applies the following standard of review in regard to a circuit court's denial of a habeas petition: "We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syl. Pt. 1, in part, *Mathena v. Haines,* 219 W.Va. 417, 633 S.E.2d 771 (2006). Moreover, this Court has stated that "[a]n ineffective assistance of counsel claim presents a mixed question of law and fact[.]" *State ex rel. Daniel v.*

---

[2] While at Walmart, petitioner told an individual in the parking lot, "If you give me a ride back to Dunbar, you'll see somebody get killed."

[3] Petitioner's plea counsel was Edward Rebrook, III.

2

*Legursky,* 195 W.Va. 314, 320, 465 S.E.2d 416, 422 (1995). Therefore, "we review the circuit court's findings of historical fact for clear error and its legal conclusions *de novo*. This means that we review the ultimate legal claim of ineffective assistance of counsel *de novo* and the circuit court's findings of underlying predicate facts more deferentially." *Id.*

On appeal, petitioner argues that his plea counsel was ineffective because, several days prior to the entry of his plea, the State sent petitioner's counsel a proposed plea agreement that included an incorrect sentence for the offense of kidnapping. This letter stated that the sentence for kidnapping was three to ten years, which all parties agree was in error. Petitioner's plea counsel forwarded the letter to petitioner without catching the mistake therein.

The mistake in the proposed plea document was noticed on the day of petitioner's plea hearing and his counsel advised petitioner of the correct possible sentence. Petitioner argues that his counsel should have ensured that petitioner was not faced with having to make a last second decision of such magnitude.

The record reflects that petitioner's counsel and the assistant prosecutor set forth on the record at the plea hearing that the State had sent petitioner's counsel a plea agreement with the incorrect sentence for kidnapping and plea counsel admitted that he sent petitioner a letter referencing the incorrect sentence in that document. Plea counsel stated that he explained the correct sentence to petitioner that morning. The exchange between plea counsel, the State, and circuit judge took place at the bench without petitioner being present. In his habeas petition, petitioner argues that he should have been asked to confirm his counsel's representations that he explained the accurate sentencing possibilities.

In addition, petitioner contends that he received a sentence more severe than expected and constitutionally disproportionate to the sentence imposed on the admitted killer. Petitioner states that Bellamy pled guilty to first degree murder with a firearm and was sentenced to life with mercy, and the kidnapping charge was dismissed.

Respondent Warden argues that, although petitioner's counsel erred in sending petitioner the document listing an incorrect kidnapping sentence, counsel corrected the error as soon as it was discovered, and importantly, in advance of the plea hearing. As respondent notes, the erroneous plea document was corrected, explained to petitioner, and he proceeded to enter his plea. Also, petitioner understood that the agreement did not bind the judge to impose a specific sentence. Finally, with respect to comparing petitioner's sentence to Bellamy's, the record shows that the victim died of blunt force injury and a gunshot. As respondent argues, petitioner was no less to blame for the victim's death.

Our review of the record reflects no clear error or abuse of discretion by the circuit court. Having reviewed the circuit court's "Order Denying Petition for Writ of Habeas Corpus" entered on September 17, 2013, we hereby adopt and incorporate the circuit court's well-reasoned

3

findings and conclusions as to the assignment of error raised in this appeal. The Clerk is directed to attach a copy of the circuit court's order[4] to this memorandum decision.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** April 10, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

---

[4] We note that the handwriting on page 2 of the circuit court's order is how the document exists in the circuit clerk's file.

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

STATE OF WEST VIRGINIA, ex rel
GARY STANLEY
      Petitioner,

FILE COPY

v.

                      Civil Action No. 06-MISC-311
                      (Judge Jennifer F. Bailey)

MARK WILLIAMSON,
WARDEN OF DENMAR
CORRECTIONAL CENTER
      Respondent.



F I L E D

OCT 18 2013

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

On a former day came the Petitioner, Gary Stanley, by counsel Woody Hill and presented his Petition for Writ of Habeas Corpus and brief in support thereof. Subsequently, came the Respondent Mark Williamson by counsel, K. Michele Drummond, Assistant Prosecuting Attorneys in and for Kanawha County and presented a Reply to the Petition for Writ of Habeas Corpus. On the 13th of August, 2013, came the Petitioner, Gary Stanley, by counsel Woody Hill and also came K. Michele Drummond for the purpose of an omnibus hearing in the above-styled matter. After hearing testimony and the argument of counsel and after a thorough review of the petition, the Respondent's reply, exhibits, underlying records including but not limited to the transcript of the plea of guilty, other documentary evidence, and applicable case law, the Court **FINDS** the matter ripe for a decision and makes the following Findings of Fact and Conclusions of Law:

1. On the 11th day of October, 2002, members of the Charleston Police Department responded to the area of Spence Drive and Wertz Avenue, Charleston, West Virginia, in reference to a deceased person.

2. The victim, Deran Mazujian, was known to reside at 1607 Payne Avenue, Dunbar, West Virginia.

3. After being granted consent to search said residence by Gary Stanley, investigators discovered blood within.

4. Mr. Stanley informed investigators that Mr. Mazujian had been shot at said residence by an individual known as "Anthony". According to Mr. Stanley, Mr. Mazujian was placed in a box and thrown over a hillside in the area of Wertz Avenue by he and "Anthony".

5. "Anthony" was identified as Ulysses Anthony Bellamy. A warrant was issued charging Mr. Bellamy with Murder.

6. Mr. Bellamy provided a statement to investigators stating that he had walked to the bedroom of Mr. Mazujian where he and Michael Varnado began beating Mr. Mazujian. Mr. Bellamy stated that he had struck Mr. Mazujian in the head with a chair in addition to beating him. Mr. Bellamy stated that he had waited with Mr. Mazujian while Mr. Stanley traveled to Wal-Mart to purchase bullets. While at Wal-Mart, Mr. Stanley told an individual, "If you give me a ride back to Dunbar, you'll see somebody get killed." Upon Mr. Stanley's return, Mr. Stanley beat Mr. Mazujian and Mr. Bellamy shot him through a pillow. Mr. Bellamy stated that the weapon used was a 9 millimeter gun which he subsequently hid under a chair. Mr. Bellamy stated that Mr. Stanley purchased garbage bags which were not strong enough to hold Mr. Mazujian's body and that the body was wrapped in a blanket, placed in a box which had been emptied and thrown over a hillside.

7. The post-mortem examination revealed that Mr. Mazujian, died from multiple blunt force injuries to the head and a gunshot wound to the face.

8. The Petitioner filed a Petition for Writ of Habeas Corpus with this Court. The Petitioner alleged the following: (1) denial of his right to due process of law guaranteed by the Fourteenth Amendment to the United States Constitution when his guilty pleas were not voluntarily, knowingly and intelligently entered; and (2) denial of his right to process of law guaranteed by the Eighth Amendment to the United States Constitution and Article III of the West Virginia Constitution when he was sentenced to a severer sentence than expected based upon information that he was given by his attorney, the sentences received by co-defendants, and the petitioner's involvement in the incident.

9. On the 17th day of May, 2013, the Petitioner tendered his written Checklist of Grounds for Post-Conviction Habeas Corpus Relief. Pursuant to the checklist, Petitioner acknowledged that he was raising the following issues as grounds for relief: (6) involuntary guilty plea; (19) unfulfilled plea bargains; (21) ineffective assistance of counsel; (47) defendant's absence from part of the proceedings; (50) severer sentence than expected and (54) denial of his right to due process of law guaranteed by the Constitutions of the United States and the State of West Virginia when he entered a plea of guilty based upon false information provided by his attorney which rendered the plea of guilty not voluntarily, knowingly and intelligently entered.

10. West Virginia's post-conviction habeas corpus proceedings afford a petitioner with an opportunity to "raise any collateral issues which have not previously been fully and fairly litigated." State ex rel. Markley v. Coleman, 215 W. Va. 729, 732, 601 S.E.2d 49, 52 (2004); Losh, supra. At the omnibus habeas corpus hearing, a petitioner is required to raise all grounds known or that reasonably could be own by him. Markley, supra.

11. The West Virginia Supreme Court of Appeals has stated that "[o]ur post conviction habeas corpus statute . . . clearly contemplates that a person who has been convicted of a crime is ordinarily entitled, as a matter of right, to only one post-conviction habeas corpus proceeding." Syl. pt. 1, Gibson v. Dale, 173 W. Va. 681, 319 S.E.2d 806 (1984). The initial habeas corpus hearing is res judicata as to all matters raised and to all matters known or which with reasonable diligence could have been known. Syl. pt. 4, Losh, supra. Therefore, only ineffective assistance of habeas counsel, newly discovered evidence, or a change in law favorable to the applicant and which may be applied retroactively can be considered in any subsequent habeas petition. Id.

12. A petitioner is entitled to careful consideration of his claims Markley, supra. Such consideration is mandated in order to assure that no violation or petitioner's due process rights could have escaped the attention of either the trial court or the State Supreme Court. Id. Circuit Courts denying or granting relief in a habeas corpus case are statutorily required to make specific findings of fact and conclusions of law relating to each contention advanced by a petitioner and to state the grounds upon which the matter was determined. Id. The State Supreme Court has held that where petitioner fails to provide adequate factual support for his allegations and makes nothing more than mere blanket assertions without the appropriate factual basis, the claims must be denied. Id.

13. Pursuant to W. Va. Code §53-4A-7 (1931), the Court shall enter an order denying relief if based on the petition, affidavits, exhibits, records and other documentary evidence that the petitioner fails to meet a probable cause standard, or if the grounds in the petition have previously been adjudicated or waived.

18. The West Virginia Supreme Court of Appeals in Call v. McKenzie, 159 W.Va. 191, 220 S.E.2d 665 (1975), held that a defendant may knowingly and intelligently waive constitutional rights. Once having done so he cannot be heard to complain thereafter. The Court noted that the most common issues in habeas corpus cases are whether there were, indeed, knowing and intelligent waivers, whether there were facts outside the record which improperly caused the defendant to enter his plea, and whether defendant's counsel was indeed competent and that said issues can be finally resolved in the careful taking of the original plea. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

19. The West Virginia Supreme Court of Appeals in State v. Boyce, 230 W.Va. 725, 742 S.E.2d 413 (2013) held that when a criminal defendant proposes to enter a plea of guilty, the trial judge should interrogate such defendant on the record with regard to his intelligent understanding of the following rights, some of which he will waive by pleading guilty: (1) the right to retain counsel of his choice, and if indigent, the right to court appointed counsel; (2) the right to consult with counsel and have counsel prepare the defense; (3) the right to a public trial by an impartial jury of twelve persons; (4) the right to have the State prove its case beyond a reasonable doubt and the right of the defendant to stand mute during the proceedings; (5) the right to confront and cross-examine his accusers; (6) the right to present witnesses in his own defense and to testify himself in his own defense; (7) the right to appeal the conviction for any

errors of law; (8) the right to move to suppress illegally obtained evidence and illegally obtained confessions; and, (9) the right to challenge in the trial court and on appeal all pre-trial proceedings.

20.  Where there is a plea bargain by which the defendant pleads guilty in consideration for some benefit conferred by the State, the trial court should spread the terms of the bargain upon the record and interrogate the defendant concerning whether he understands the rights he is waiving by pleading guilty and whether there is any pressure upon him to plead guilty other than the consideration admitted on the record.

21.  When accepting a guilty plea, the trial court should spread upon the record the defendant's education, whether he consulted with friends or relatives about his plea, any history of mental illness or drug use, the extent he consulted with counsel, and all other relevant matters which will demonstrate to an appellate court or a trial court proceeding in habeas corpus that the defendant's plea was knowingly and intelligently made with due regard to the intelligent waiver of known rights.

22.  As the transcript reveals, the Court determined that the Petitioner was the same person as the individual charged in the indictment, that the defendant had received a copy of the indictment returned against him, and that the defendant understood the nature and meaning of the criminal charges made against him in that indictment. The Court interrogated the Petitioner with regard to the circumstances under which he received a copy of the indictment and the opportunity which he has had to read and understand it. The Court asked the Petitioner whether he understood the nature of the charges against him and the corresponding maximum penalty the court could impose. The Court interrogated defense counsel with regard to the extent he has advised his client. The Court discussed with the Petitioner for the record the constitutional rights

which he was waiving by entering his guilty plea. The Court determined that the Petitioner was satisfied with defense counsel. The Petitioner indicated that he understood that if he elected to plead guilty, the he would be giving up his right to a jury trial by twelve qualified persons. The terms of the plea bargain were set forth on the record, and the Petitioner was interrogated with regard to whether any pressure was exerted upon him to enter into a plea bargain. Before the Court accepted the plea, the Court advised the accused that he need not plead guilty and that in addition to the rights outlined above that he was entitled: 1) to require the State to prove his guilt beyond a reasonable doubt; 2) to stand mute during the proceedings; 3) to confront his accusers and cross-examine witnesses against him; 4) to call witnesses in his own defense and to testify himself in his own defense; 5) to appeal his conviction if there are any errors of law; 6) to move to suppress any illegally obtained evidence or illegally obtained confessions; and 7) to challenge in the trial court and on appeal any errors in pre-trial proceedings. Finally, the defendant indicated that he fully understood that by entering a plea of guilty he waived all pre-trial defects with regard to his arrest, the gathering of evidence, prior confessions, etc., and further, that if he entered a plea of guilty he waived all non-jurisdictional defects in the criminal proceeding.

The assistant prosecuting attorney informed the Court of the plea agreement which consisted of the defendant entering a plea of guilty to the felony offenses of Voluntary Manslaughter and Kidnapping. He further informed the Court that the State would not oppose the defendant's request for a sentence of life with mercy with regard to the kidnapping and that the State would defer to the Court with regard to the appropriate sentence with regard to the Voluntary Manslaughter but that the State was reserving the right to argue that any sentence imposed with regard to the Kidnapping run consecutively with any sentence the Court imposed with regard to the Voluntary Manslaughter. The assistant prosecuting attorney further clarified

that the effect of the agreement, if the Court chose to sentence the defendant in accord with the agreement, would be a sentence of ten years to life with regard to the Kidnapping, a sentence which would be determined by the Court with regard to the Voluntary Manslaughter, and sentences which would run concurrently or consecutively per the Court's determination. The assistant prosecuting attorney stressed that both parties anticipated a granting of mercy by the Court. Plea Tr. pgs. 3 and 4.

The prosecuting attorney, during the recitation of the agreement, cited what he deemed to be the most important paragraph of the agreement which noted that the Petitioner understood that sentencing would be solely up to the Court and that any recommendations of the parties were not binding upon the Court. Further, the prosecuting attorney noted that per the agreement, if the Petitioner received a sentence that he did not like that he would not then have the right to have the plea of guilty vacated. Plea Tr. p. 4.

The Court addressed the Petitioner regarding whether the agreement as recited by the assistant prosecuting attorney was the agreement as he understood it. The Petitioner responded in the affirmative. Plea Tr. p. 8. The Court addressed the Petitioner regarding his satisfaction with the agreement. The Petitioner indicated his satisfaction. Plea Tr. p. 8.

The Court addressed the Petitioner regarding whether or not he understood that the lawyers could not guarantee him a specific sentence. The Petitioner responded in the affirmative. Plea Tr. p. 8.

The Court addressed the Petitioner regarding whether or not he understood that if he was unhappy with the sentence imposed by the Court that he would not then be permitted to withdraw the same. The Petitioner responded in the affirmative. Plea Tr. p. 9. The Court ascertained a second time that the Petitioner understood that. Plea Tr. p. 9.

The Court addressed defense counsel regarding whether or not he had explained the maximum penalty as to both Voluntary Manslaughter and Kidnapping. Defense counsel responded in the affirmative. Plea Tr. p. 9. The Court then addressed the Petitioner regarding whether or not he understood that the maximum sentence for the offense of Voluntary Manslaughter was not less than three years nor more than fifteen. The Court also addressed the Petitioner regarding whether or not he understood that the maximum sentence for the offense of Kidnapping was confinement for life. The Petitioner responded in the affirmative. Plea Tr. p. 10.

The Court then addressed defense counsel regarding whether or not he had explained to the Petitioner that the Court was not bound by any request that the parties might make with regard to mercy which would result in the Petitioner becoming eligible for parole after serving ten years. Defense counsel responded that he had explained the same to the Petitioner and that he believed that the Petitioner understood that regardless of the agreement that sentencing was in the sole discretion of the Court. Defense counsel further explained that he had shared with the Petitioner that the Court would make that decision based upon what the Court believed justice required, based upon the presentence report and based upon the facts of the case. Plea Tr. p. 10. Defense counsel did state that he had told the Petitioner that he was hopeful that the Court would grant him mercy which would result in a parole eligibility after he had served ten years with regard to the Kidnapping. Plea Tr. p. 11.

The Court addressed defense counsel regarding whether or not he had explained to the Petitioner that any sentences imposed could be ordered to run consecutively. Defense counsel responded in the affirmative. Plea Tr. p. 12.

The Court then returned to the Petitioner with regard to defense counsel's explanation of his discussions with the Petitioner regarding sentencing. The Court addressed the Petitioner regarding whether that explanation was accurate as to his understanding of the possibilities as to sentencing. The Petitioner responded in the affirmative. Plea Tr. p. 12.

The Court then permitted the Petitioner the opportunity to consult with his counsel. The Petitioner availed himself of that opportunity. Plea Tr. p. 12. Defense counsel reiterated that the Petitioner fully understood that sentencing would be solely within the discretion of the court. The Court addressed the Petitioner with regard to whether that was correct. The Petitioner responded in the affirmative. The Court addressed the Petitioner with regard to whether he understood that the Court could impose the maximum penalty whether he entered a plea of guilty or whether he was convicted by a jury. The Petitioner responded in the affirmative. Plea Tr. p. 13.

The Court addressed the Petitioner with regard to whether he had been promised a lenient sentence or made any promise other than as set forth in the plea agreement that had been discussed to induce his pleas of guilty. The Petitioner responded in the negative. The Court addressed the Petitioner with regard to whether had been threatened, intimidated, coerced or pressured in any manner to enter the pleas of guilty. The Petitioner responded in the negative. The Court addressed the Petitioner with regard to whether, in his opinion, he was entering the plea agreement of his own free will. The Petitioner responded in the affirmative. Plea Tr. p. 30.

23. In Syllabus Point 3 of State v. Sims, 162 W.Va. 212, 248 S.E.2d 834 (1978), the West Virginia Supreme Court of Appeals set forth the conditions that must be met in order to prevail on a claim of ineffective assistance of counsel after a guilty plea:

> "Before a guilty plea will be set aside based on the fact that the defendant was incompetently advised, it must be shown that (1) counsel did act

incompetently; (2) the incompetency must relate to a matter which would have substantially affected the fact-finding process if the case had proceeded to trial; (3) the guilty plea must have been motivated by this error."

In explaining the first of these elements, the Court stated: "Before an initial finding will be made that counsel acted incompetently with respect to advising on legal issues in connection with a guilty plea, the advice must be manifestly erroneous."

During the guilty plea hearing, the Court asked the Petitioner if he was satisfied with the representation of his defense counsel. The Petitioner responded in the affirmative. The Court asked the Petitioner if he had any complaints whatsoever about his defense counsel's representation. The Petitioner responded in the negative. The Court asked the Petitioner if his defense counsel had done everything he should have on his behalf. The Petitioner responded in the affirmative. The Court asked the Petitioner whether his defense counsel had done anything on his behalf that he had not wanted him to do. The Petitioner responded in the negative.

The Petitioner alleges that defense counsel misrepresented to the Petitioner and members of the Petitioner's family that the Petitioner would only serve a sentence of ten (10) years with regard to the Kidnapping and would only serve three (3) to fifteen (15) years with regard to the Voluntary Manslaughter, and that said sentences would run concurrently. The Respondent offered the testimony of trial counsel that is was his practice to discuss the possible sentence with all defendants prior to the entry of a plea of guilty. Therefore, the Petitioner will have failed to meet his burden of proof under the Sims test.

24. The Petitioner's guilty pleas to Kidnapping and Voluntary Manslaughter were voluntarily and intelligently entered and were thus valid. The Court conducted a thorough plea colloquy during which the terms of the plea agreement were reviewed with defendant, and his education, understanding of the proceedings, and mental health status were discussed, and

defendant indicated that he had consulted with friends and family about the plea and had meetings with his counsel about the plea agreement before deciding how he wished to plead, after which trial court informed defendant of his constitutional rights and that pleading guilty would result in waiver of some of those rights. Additionally, the Court thoroughly addressed the potential sentence for both Kidnapping and Voluntary Manslaughter. The transcript reveals that the Petitioner understood what those potential sentences were and chose to enter said pleas.

25. When considering the Petitioner's claim that he received a severer sentence than expected, the transcript clearly reflects that the Petitioner understood the possible penalties as to each of the offenses to which he was entering pleas of guilty. The Petitioner was further aware of the possible maximum sentence for the offenses to which the petitioner offered pleas of guilty pursuant to the plea agreement and the Court imposed the statutory sentences for each offense of which the petitioner was convicted. The record is abundantly clear that the petitioner was readily aware that the court could impose the sentence ultimately imposed upon the petitioner and the petitioner failed to prove the he received a severer sentence than expected.

26. The Petitioner in his written Checklist of Grounds for Post-Conviction Habeas Corpus Relief, raises the issue of (6) involuntary guilty plea; (21) ineffective assistance of counsel; and (54) denial of his right to due process of law guaranteed by the Constitutions of the United States and the State of West Virginia when he entered a plea of guilty based upon false information provided by his attorney which rendered the plea of guilty not voluntarily, knowingly and intelligently entered. The Court has previously addressed these issues.

27. The Petitioner in his written Checklist of Grounds for Post-Conviction Habeas Corpus Relief, raises the issues of (19) unfulfilled plea bargain. The State did not fail to fulfill the plea bargain. The Petitioner received the benefit of his plea bargain when he was sentenced

to life with mercy with regard to the Kidnapping. The State had agreed not to oppose a request for the same when posed by defense counsel at the time of sentencing. In light of the foregoing, this ground is without merit.

28. The Petitioner in his written Checklist of Grounds for Post-Conviction Habeas Corpus Relief, raises the issue of (47) Petitioner's absence from part of the proceedings. The proceeding had concluded. In light of the foregoing, this ground is without merit.

## RESOLUTION

Based upon the foregoing, the Court **DENIES** the instant Habeas Petition and **ORDERS** the matter stricken from the docket. The Court also notes the Petitioner's objection and exception to its ruling. Lastly, the Court **ORDERS** certified copies of this Order and Opinion to be provided to all counsel of record and Petitioner.

ENTERED THIS ___16th___ day of ___September___, 2013

_____
JENNIFER L. BAILEY, JUDGE
Thirteenth Judicial Circuit

**PRESENTED BY:**

_____
K. MICHELE DRUMMOND, Assistant
Prosecuting Attorney in and for
Kanawha County, West Virginia
301 Virginia Street East
Charleston, WV 25301
WV State Bar ID No. 4931

STATE OF WEST VIRGINIA
COUNTY OF KANAWHA, SS
I, CATHY S. GATSON, CLERK OF CIRCUIT COURT OF SAID COUNTY AND IN SAID STATE, DO HEREBY CERTIFY THAT THE FOREGOING IS A TRUE COPY FROM THE RECORDS OF SAID COURT
GIVEN UNDER MY HAND AND SEAL OF SAID COURT THIS 19
DAY OF September 2013
_____ CLERK
CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA