# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**MARVIN PLUMLEY, WARDEN,**
**Huttonsville Correctional Center,**
**Respondent Below, Petitioner**

vs) **No. 14-1202** (Jefferson County 13-C-64)

**SHANE DODSON,**
**Petitioner Below, Respondent**

**FILED**

**April 7, 2016**

**released at 3:00 p.m.**
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

This appeal is brought by the State in the name of Petitioner Marvin Plumley, Warden of the Huttonsville Correctional Center, by counsel Brandon C. H. Sims. The State appeals an order entered by the Circuit Court of Jefferson County, West Virginia, which granted habeas corpus relief to Respondent Shane Dodson. The habeas court determined that Mr. Dodson received ineffective assistance of counsel during plea negotiations, which adversely affected his decision to reject the State's plea offer. The State contends the habeas court erred in granting Mr. Dodson relief because it (1) misapplied the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and (2) made findings that contradicted the plain preponderance of the evidence. Mr. Dodson, by counsel, Christopher Dulany Petersen, filed a brief in support of the habeas court's order.

Upon a thorough review of the record, the arguments of counsel, and applicable precedent, we agree with the State. This Court finds that Mr. Dodson did not meet the requisite showing to prevail on his claim of ineffective assistance of counsel. We therefore reverse the order of the habeas court. This case does not present a new or significant question of law and, therefore, satisfies the "limited circumstance" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure. As such, it is properly resolved in this memorandum decision.

## I. FACTUAL AND PROCEDURAL HISTORY
### A. Trial Proceedings

In April of 2011, Mr. Dodson was convicted of daytime burglary and domestic battery following a two-day jury trial. The convictions followed a domestic dispute, which occurred in September of 2010. Mr. Dodson went to the home of his girlfriend, Brittany Carrigan. When Ms. Carrigan refused to answer the door, Mr. Dodson opened it, entered the home and struck her multiple times. After the police arrived, Ms. Carrigan gave a statement indicating that Mr. Dodson pushed open the door, went in, and started hitting her. Ms. Carrigan's statement was corroborated by the statement of Donna Weed, who was present in the home during the incident

1

and could hear the altercation, and two neighbors who witnessed events from outside. The police took photos of Ms. Carrigan's injuries. Thereafter, Mr. Dodson was arrested.

Shortly after the incident, Ms. Carrigan gave a second statement to the police purporting to recant her first. Ms. Carrigan stated, in part:

> I invited Shane Monroe Dodson over to my house to pick up a car title for a 2004 Dodge Neon. He is currently being charged with daytime burglary. I would like to drop ALL charges considering he had an invitation to enter my house. I never said that I wanted to press ANY charges on Shane Dodson.

Prior to trial, the State offered a plea deal to Mr. Dodson. If Mr. Dodson pled guilty to burglary and domestic battery as charged in the indictment, and to an additional domestic battery charge then pending in magistrate court, the State agreed to refrain from filing a recidivist information.[1] Had he accepted this offer, Mr. Dodson would be subject to an aggregate sentence of one to ten years imprisonment. Mr. Dodson's counsel, Sherman Lambert, presented the State's plea offer to him. Following discussions with counsel, Mr. Dodson decided to reject the plea offer and proceed to trial. Mr. Dodson confirmed his rejection of the plea offer on the record at a pre-trial hearing held in March of 2011. Mr. Dodson acknowledged at that time that he was aware he was facing a life sentence as a recidivist if he were convicted at trial of the felony burglary charge or the lesser included offense of daytime burglary, also a felony.[2]

At trial, the State called several witnesses who observed Mr. Dodson before he entered Ms. Carrigan's home and/or after the couple exited the home. Several witnesses testified that

---

[1]Considering his prior convictions, Mr. Dodson was facing life imprisonment, without eligibility for parole for fifteen years. *See* W.Va. Code § 61-11-18(c) (2014). Mr. Dodson had more than three qualifying felony convictions; in 2004, he was convicted, pursuant to a guilty plea, of the felony offenses of malicious assault and attempted murder, and attempt to commit a felony. In 2001, Mr. Dodson was convicted, pursuant to a guilty plea, of the felony offense of grand larceny. In 2000, Mr. Dodson was convicted, pursuant to a guilty plea, of the felony offense of possession of a stolen vehicle.

[2]West Virginia Code § 61-3-11 (2014), provides, in part:

> (a) Burglary shall be a felony and any person convicted thereof shall be confined in the penitentiary not less than one nor more than fifteen years. If any person shall, in the nighttime, break and enter, or enter without breaking, or shall, in the daytime, break and enter, the dwelling house, or an outhouse adjoining thereto or occupied therewith, of another, with intent to commit a crime therein, he shall be deemed guilty of burglary.
> (b) If any person shall, in the daytime, enter without breaking a dwelling house, or an outhouse adjoining thereto or occupied therewith, of another, with intent to commit a crime therein, he shall be deemed guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than one nor more than ten years.

they observed Ms. Carrigan upset and injured following the altercation. Mr. Dodson did not testify at trial; he called Ms. Carrigan as the only defense witness. Ms. Carrigan testified that she invited Mr. Dodson to her home to give him a car title and that no battery occurred. Ms. Carrigan explained that her prior inconsistent statement was caused by her intoxication and anger at Mr. Dodson. Therefore, Mr. Dodson's defense to the burglary charge was that he was invited to Ms. Carrigan's home and entered without the intent to commit a crime. His defense to the domestic battery charge was that a battery never occurred.

The jury did not find Mr. Dodson guilty of burglary. Instead, the jury found him guilty of the lesser included offense of daytime burglary. The jury also found Mr. Dodson guilty of domestic battery. The State filed an information, alleging that Mr. Dodson was previously convicted of two felonies and seeking an enhanced sentence pursuant to our recidivist statute, West Virginia Code § 61-11-18(c). Thereafter, Mr. Dodson acknowledged that he was the person identified in the two prior felony convictions. In June of 2011, Mr. Dodson was sentenced to life in prison, with the possibility of parole after fifteen years for the felony daytime burglary conviction, and a consecutive one year for the misdemeanor domestic battery conviction.[3]

## B. Habeas Proceedings

Mr. Dodson filed a habeas corpus petition and asserted a number of grounds for relief, including ineffective assistance of counsel. As relevant here, he claimed his counsel was deficient for failing to provide appropriate advice when they were discussing the State's plea offer. In June of 2014, the parties came before the habeas court for the purpose of conducting an omnibus habeas corpus hearing. The habeas court heard testimony from Mr. Dodson, his mother, Sherry Dodson, and his counsel, Mr. Lambert.

Mr. Dodson alleged that his counsel failed to properly advise him of the laws governing the charges he faced and that, as such, he rejected a plea offer that he should have accepted and would have accepted had he been properly informed. Mr. Dodson testified that counsel told him "we're not even going to consider a plea bargain" because the State could not convict him of burglary as he did not break into or steal anything from Ms. Carrigan's home, and that he could not be convicted of domestic battery because Ms. Carrigan and he were not related or living together. Mr. Dodson's mother made similar statements; she testified that counsel told her there was "no possible way" they could find Mr. Dodson guilty because "he didn't go into the place to take anything out."

Counsel gave a markedly different account of the plea discussions. Counsel testified that he properly advised Mr. Dodson regarding the charges he faced. Counsel testified that it was solely Mr. Dodson's decision to deny the plea offer. When counsel was asked if he advised Mr. Dodson that it was in his interest to accept the plea, counsel testified that, "Not only did I advise him[,] I asked him are you sure this is what you want to do and he said yes. His mind set was clearly against the plea[.]" Counsel explained that Mr. Dodson "knows the system and that's exactly why he did not accept the plea offer. It had nothing to do with me. It had to do with he

---

[3]This Court affirmed Mr. Dodson's convictions on direct appeal. *State v. Dodson*, No. 11-1789, 2013 WL 500225 (W.Va. Feb. 11, 2013) (memorandum decision).

and Ms. [Carrigan] providing the court with this [recantation] letter." Counsel testified that Mr. Dodson believed that Ms. Carrigan's letter would exonerate him of the charges. Counsel testified that Mr. Dodson was unwilling to listen to his advice: "His entire demeanor was based upon not accepting the plea [and] that decision was his decision and his decision alone." He characterized Mr. Dodson as not "the kind of person who's told what to do." Counsel also testified that Mr. Dodson "perjured himself this morning and I'm concerned about that."

The habeas court ruled that Mr. Dodson was denied effective assistance of counsel in the plea bargaining phase of his prosecution.[4] The habeas court stated that "[c]ounsel's failure to properly understand or inform his client of the governing law of Burglary prior to Mr. Dodson's rejection of the Plea Offer was outside the range of professionally competent assistance." The habeas court further found that Mr. Dodson was prejudiced by counsel's ineffective assistance on the burglary charge.[5] "Upon his conviction, Mr. Dodson received a penitentiary sentence of fifteen (15) years to life. Had he accepted the Plea Offer, he would have received a penitentiary sentence of one (1) to ten (10) years." As the remedy, the habeas court ordered the State to reoffer Mr. Dodson the plea offer. *See Lafler v. Cooper*, 132 S.Ct. 1376, 1391 (2012) (finding court may exercise discretion to vacate convictions and resentence defendant pursuant to plea agreement as remedy when defendant has satisfied *Strickland's* two-part test, presuming defendant accepts offer).

### C. Assignment of Errors on Appeal

The State asserts the habeas court (1) improperly applied the *Strickland* standard, and (2) made findings which contradicted the plain preponderance of the evidence. The State maintains that counsel's performance was not deficient under an objective standard of reasonableness because the defense strategy would have completely exonerated Mr. Dodson of the burglary charge had the jury believed Ms. Carrigan. Mr. Dodson disagrees and responds that "[a]t the heart of this matter is the conflicting testimony of a client and his attorney. . . . Both stories cannot be true, and both parties have a lot to lose if their story is not believed." Thus, Mr. Dodson urges this Court to afford deference to the habeas court's judgment.

### II. STANDARD OF REVIEW

"An ineffective assistance of counsel claim presents a mixed question of law and fact[.]" *State ex rel. Daniel v. Legursky*, 195 W. Va. 314, 320, 465 S.E.2d 416, 422 (1995). Our review

---

[4]The habeas court rejected Mr. Dodson's claim that he received ineffective assistance of counsel at trial. Mr. Dodson does not challenge this finding through a cross assignment of error.

[5]The habeas court also decided that counsel either misunderstood or misrepresented the elements of domestic battery. *See* W.Va. Code § 61-2-28 (2014). However, it did not use this conclusion as the basis for granting habeas corpus relief because Mr. Dodson could not satisfy the prejudice prong of *Strickland* on the misdemeanor charge. There was no disparity between the sentence received upon conviction and what was offered in the plea. Mr. Dodson does not challenge this finding through a cross assignment of error. We therefore focus our analysis on the felony charge.

4

of the habeas court's final order is threefold: "We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syl. Pt. 1, in part, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

We note that the habeas court judge was Mr. Dodson's trial court judge. Had the judge made credibility determinations, this Court would have afforded him great deference because he had the opportunity to view the witnesses. *See Bartles v. Hinkle*, 196 W.Va. 381, 389, 472 S.E.2d 827, 835 (1996) (noting trial court's credibility determinations "are entitled to special deference"). However, the habeas court made no explicit credibility assessments. It took the conflicting statements of Mr. Dodson and his counsel at face value and evaluated those statements in light of what transpired at trial: "Counsel's statements and arguments *at trial* can be seen to support Mr. Dodson's allegations, at least with respect to counsel's advice regarding the elements of Domestic Battery and the evidentiary rules regarding testimony pertaining to Burglary and the lesser included offense of Daytime Burglary[.]"

This Court reviews Mr. Dodson's "ultimate legal claim of ineffective assistance of counsel *de novo*." *Daniel*, 195 W.Va. at 320, 465 S.E.2d at 422. With these principles in mind, we consider the arguments of the parties.

### III. DISCUSSION

The United States Supreme Court has made clear that the Sixth Amendment right to effective assistance of counsel, afforded all criminal defendants, is "a right that extends to the plea bargaining process." *Lafler*, 132 S.Ct. at 1384; *see also Padilla v. Kentucky,* 559 U.S. 356, 373 (2010); *Hill v. Lockhart,* 474 U.S. 52, 57 (1985); *McMann v. Richardson,* 397 U.S. 759, 771 (1970). The right to effective assistance of counsel extends to the plea bargaining process not only when a defendant accepts a guilty plea, but also when a defendant rejects a plea offer and elects to go to trial. *See Lafler,* 132 S.Ct. at 1386 ("Even if the [subsequent] trial itself is free from constitutional flaw, the defendant who goes to trial instead of taking a more favorable plea may be prejudiced from either a conviction on more serious counts or the imposition of a more severe sentence.").[6]

Our standard for evaluating counsel's effectiveness is well-settled. In syllabus point five of *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995), this Court adopted the two-pronged test established in *Strickland*:

> In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a

---

[6]Mr. Dodson asserts that this case presents the first opportunity for this Court to fully discuss the application of *Lafler*. We disagree. This case is markedly distinguishable from *Lafler* because the State does not concede that counsel was deficient. This case is actually the inverse of *Lafler* – the determinative issue before this Court is the performance prong of *Strickland*, not the prejudice prong.

reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

This Court provided further guidance in syllabus point six of *Miller*:

> In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

194 W.Va. at 6-7, 459 S.E.2d at 117-18. Moreover, because judicial scrutiny of counsel's performance is "highly deferential" under *Strickland,* 466 U.S. at 689-90, courts "should presume strongly that counsel's performance was reasonable and adequate." *Miller*, 194 W.Va. at 16, 459 S.E.2d at 127.

Although plea negotiations are a critical stage in the prosecution, the duties and responsibilities of defense counsel in the plea bargain process have not been specifically defined by the United States Supreme Court. *See Missouri v. Frye,* 132 S.Ct. 1399, 1407-08 (2012). "This is because the art of negotiation is nuanced, involves matters of personal style, and presents questions farther removed from judicial supervision." *McGowan v. Burt*, 788 F.3d 510, 515 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 415, 193 L. Ed. 2d 328 (2015). These considerations make strict adherence to the *Strickland* standard all the more essential when reviewing challenges to counsel's conduct at the plea bargain stage. Failure to do so would encourage a proliferation of habeas claims for relief that rely on self-serving and otherwise unsupported declarations by prisoners. *See In re Alvernaz*, 830 P.2d 747, 756 (Cal. 1992) ("a defendant's self-serving statement -- after trial, conviction, and sentence -- that with competent advice he or she *would* have accepted a proffered plea bargain, is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice, and must be corroborated independently by objective evidence. A contrary holding would lead to an unchecked flow of easily fabricated claims.").

With this background to guide us, we address the State's first assignment of error. The State argues that the habeas court failed to properly apply the standard set forth in *Strickland* when reviewing Mr. Dodson's claim. This argument is persuasive. A plain reading of the habeas court's order shows that it did not "presume strongly" that counsel's performance was reasonable, as required by *Miller*. 194 W.Va. at 16, 459 S.E.2d at 127. To the contrary, the habeas court focused on the fact that counsel did not take notes memorializing the conversations he had with Mr. Dodson and came perilously close to placing the burden on counsel to prove his competence. As a result, the habeas court failed to hold Mr. Dodson to his "difficult burden[.]" *Id*.

The habeas court not only failed to presume strongly that counsel acted competently during plea negotiations, it compounded this error by evaluating counsel's performance at the

plea bargaining stage through the "lens of hindsight." *See* Syl. Pt. 4, *Daniel*, 195 W.Va. at 316, 465 S.E.2d at 419. The habeas court focused on isolated statements counsel made at trial to arrive at its tenuous conclusion that counsel misunderstood or misrepresented the elements of the crimes when discussing the plea offer with Mr. Dodson.[7] For instance, the habeas court focused on a single remark counsel made during opening statement that stressed Mr. Dodson entered the home "by invitation" and not by "breaking and entering" as somehow supporting the finding that Mr. Dodson was never informed of the possibility that he could be convicted of daytime burglary without the State establishing that he had broken into Ms. Carrigan's home. This conclusion is specious and ignores the purpose of opening statement. Counsel was preparing the jurors for the evidence that they would hear while establishing the foundation of the defense's theory. A proficient trial lawyer would not squander this important first impression reading the elements of the crimes from the statutes. He or she would give a succinct exposition of facts, striking the theme of the case, and setting up the argument. *Maleh v. Florida East Coast Props.*, 491 So.2d 290, 291 (Fla. Dist. Ct. App. 1986) ("[O]pening statement is frequently the most critical stage in the trial of a lawsuit, as here the jury forms its first and often lasting impression of the case.").

The habeas court ultimately speculated that Mr. Dodson's "previous pattern of risk adverse [sic] plea bargaining" would not suddenly change "unless he received some assurance that he could not be convicted of the charged offenses." However, the habeas court ignored an important fact that bolsters the contrary conclusion. During the habeas proceeding, Mr. Dodson explained that he previously entered a guilty plea to malicious assault and attempted murder in 2004. He testified that the State's filing of a notice of intent to treat him as a habitual offender is what motivated him to enter that guilty plea. Mr. Dodson then attempted to withdraw that plea after he learned that the forensic evidence was not as strong as he originally thought, but the court denied his request. Significantly, Mr. Dodson was facing the same consequences of going to trial as he did here, yet, admittedly regretted his decision to plead guilty. Hence, we know that Mr. Dodson (1) was strategic about deciding whether to enter a guilty plea and (2) knew of the difficulty of withdrawing a plea. This behavior demonstrates that Mr. Dodson would risk the possibility of being treated as a habitual offender if he had reason to believe he could prevail at trial. His past performance therefore supports counsel's recollection that Mr. Dodson chose to reject the plea because Ms. Carrigan recanted.

While the decision to reject the plea proved to be wrong, it was Mr. Dodson's to make. *See Aguasvivas-Castillo v. U.S.*, 49 F.Supp.3d 167, 177 (D.P.R. 2014) ("a lawyer must take care not to coerce a client into either accepting or rejecting a plea offer."). The real risk Mr. Dodson faced by going to trial was the possibility of a felony conviction that would trigger recidivist enhancement. The intent to commit a crime within the residence – prior to entering that dwelling – was the critical element of the charge. At the time the plea was offered by the State, Mr. Dodson knew that Ms. Carrigan had recanted; the crux of the defense was that Mr. Dodson was

---

[7]The habeas court also recalled one comment made at the sentencing hearing it felt "inherently raise[d] suspicion" as to whether Mr. Dodson was properly advised of the law: "Mr. Dodson remarked 'We shouldn't be here today because this is, I mean, I am getting life for burglary that I did not commit. There is no door jam broken. There is no window broken. The alleged victim let me in the house.'" Nevertheless, the habeas court properly recognized that "criminal defendants often choose to only hear the aspects of their counselors' advice that they wish to hear."

invited to her home for a legitimate, non-criminal matter. If believed by the jury, Mr. Dodson would not be convicted on the felony charge.

Accordingly, we cannot find that Mr. Dodson established that his counsel's performance during plea negotiations was so deficient as to constitute ineffective assistance of counsel. The testimony of Mr. Dodson and his mother at the habeas hearing are insufficiently corroborated by independent, objective evidence. The declarations of counsel, however, and the reasonable inferences drawn from Mr. Dodson's past behavior, establish that Mr. Dodson's decision to reject the plea offer was motivated primarily by a persistent, strong, and informed hope for exoneration at trial.

Because Mr. Dodson failed to meet the first prong of *Strickland*, we find that the habeas court's ultimate disposition of this matter was an abuse of discretion. It is not necessary for this Court to address the second prong of *Strickland*. *See* Syl. Pt. 5, *Daniel*, 195 W. Va. at 316, 465 S.E.2d at 419 ("In deciding ineffective of assistance claims, a court need not address both prongs of the conjunctive standard of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995), but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.").

## IV. CONCLUSION

For the reasons set forth above, this Court finds that Mr. Dodson did not meet the requisite showing to prevail on his Sixth Amendment claim of ineffective assistance of counsel. Accordingly, the November 25, 2014, order of the Circuit Court of Jefferson County is reversed. We remand this matter for entry of an order denying Mr. Dodson habeas relief consistent with this opinion.

Reversed and Remanded.

**ISSUED:** April 7, 2016

**CONCURRED IN BY:**

Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

**DISSENTING AND WRITING SEPARATELY:**

Chief Justice Ketchum, dissenting.

The majority goes to great lengths to disguise the simple truth of this case. It is clear that counsel gave bad advice to his client, and the client relied on that advice to his detriment; he is now serving a life sentence.

8

The pivotal issue at the habeas hearing was whether counsel properly advised Mr. Dodson to take the plea offer considering the strong risk of conviction on the felony charge and the threat of life imprisonment. The habeas court heard conflicting testimony on this issue and determined that Mr. Dodson's testimony was more credible. It found that (1) counsel's advice to reject the plea offer was based on his incorrect assessment of the elements of the crimes charged, and (2) had counsel's advice been correct, Mr. Dodson would have accepted the plea offer and received a much shorter sentence. These findings by the habeas court clearly show that the testimony of Mr. Dodson's lawyer was not credible.

Against that factual backdrop, the simple question before this Court is whether the habeas court's findings have record support. And the answer to that question is "yes." Consequently, I would affirm the decision of the habeas court.

I respectfully dissent.