STATE OF WEST VIRGINIA

**Henry Wayne Johnston,**
**Petitioner Below, Petitioner**

**v.) No. 23-129** (Kanawha County 22-P-219)

**Jonathan Frame, Superintendent**
**Mt. Olive Correctional Complex,**
**Respondent Below, Respondent.**

**FILED**

**May 14, 2025**

**released at 3:00 p.m.**
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

The petitioner Henry Wayne Johnston appeals the February 9, 2023, order[1] entered by the Circuit Court of Kanawha County, West Virginia denying his post-conviction petition for writ of habeas corpus.[2] The petitioner contends that the circuit court erred by denying his petition based on his argument that he was denied his Sixth Amendment right of confrontation and received ineffective assistance of counsel.

This Court has carefully considered the briefs and oral arguments of the parties, the submitted record, and the pertinent authorities. Upon review, we find that the circuit court did not err in denying the petitioner's petition for writ of habeas corpus. Accordingly, we affirm the circuit court's order. Because there is no substantial question of law and no prejudicial error, a memorandum decision is appropriate pursuant to Rule 21(c) of the West Virginia Rules of Appellate Procedure.

In October 2015, the petitioner was indicted on three counts of first degree sexual assault in violation of West Virginia Code § 61-8B-3(c); two counts of first degree sexual

---

[1] The order on appeal is an amended final order which was entered upon motion of the petitioner as his counsel represented that he did not receive a copy of the circuit court's original final order entered on November 17, 2022.

[2] The petitioner appears by counsel Jason T. Gain. The State appears by Attorney General John B. McCuskey and Assistant Solicitor General Frankie Dame. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel. Additionally, the Court has automatically substituted the name of the current Superintendent of Mt. Olive Correctional Complex as the respondent. *See* W. Va. R. App. P. 41(c).

abuse in the first degree in violation of West Virginia Code § 61-8B-7(c); five counts of sexual abuse by a parent, guardian, custodian, or person in a position of trust in violation of West Virginia Code § 61-8D-5; and four counts of unlawful possession of material depicting a minor engaged in sexually explicit conduct in violation of West Virginia Code § 61-8C-3.[3] The victim of the petitioner's sexual assault and sexual abuse crimes, K.D., was described by the State as the petitioner's step-granddaughter.[4]

The petitioner's case proceeded to trial on November 16, 2015. Prior to opening statements, the State informed the circuit court and the petitioner that it intended to call the victim to testify, and the assistant prosecuting attorney noted, "I guess we'll see if she's unavailable[.]" The circuit court informed the parties that it intended to make a determination regarding the victim's competency following opening statements. The circuit court advised the parties of its intention as follows:

> Then after opening statements we'll take a break and we'll put her on the witness stand outside the presence of the jury and just make sure she clearly understands right and wrong and lies and not lies. I'll just do the preliminary qualification of her since she is a younger individual. At 11, she's – I think she could testify. There's not a question about that. But just to warm her up to see if she can testify.

Thereafter, the clerk administered the oath to the jury panel, and a break was taken before opening statements began. The circuit court took the opportunity during this break to conduct a colloquy with K.D. to determine her competency to testify. During the colloquy, a victim advocate from the prosecuting attorney's office was present with K.D., and K.D. was clearly upset. The circuit court confirmed this in its initial question: "How are you? You're a little upset; aren't you? Try not to be upset … So you just be a big girl and do the best you can; okay?" When the circuit court informed K.D. that she would be sitting in the witness chair when she returned to the courtroom to testify, she indicated another location in the courtroom and asked: "[c]an I sit over here?" This location was partially behind the computer monitor that petitioner maintains obscured his ability to view

---

[3] For ease of reference, we will refer to the charges that petitioner violated West Virginia Code § 61-8C-3 as the "unlawful possession" or "child pornography" charges. As indicated in the decision related to petitioner's original appeal of his convictions, "[t]he unlawful possession counts stem from sexually explicit photographs of other children found on [the] petitioner's computer." *State v. Henry W.J.*, No. 16-0088, 2017 WL 383778 at *1 (W. Va. Jan. 27, 2017) (memorandum decision).

[4] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

the victim's testimony and allegedly resulted in the violation of his constitutional right to confront his accuser. The circuit court granted her request, and counsel for the petitioner noted that he could not see K.D. from where he was standing. In response, the circuit court gave the petitioner's counsel numerous options of where he could sit or stand so that he would be able to see the victim during her testimony.[5] The State indicated that K.D.'s "main concern" was seeing the defendant, and it believed that this concern drove her request to sit in the corner with a monitor blocking her view of the defendant. The petitioner did not object and the victim was permitted to testify via this special seating arrangement.

During the trial, the circuit court dismissed the four counts of unlawful possession at the request of the petitioner after it was revealed that the West Virginia State Police failed to create an extraction report when the images supporting these charges were extracted from the petitioner's computer. The petitioner was convicted of eight of the remaining ten counts for which he was charged. Specifically, the jury acquitted the petitioner of one count of sexual assault in the first degree and one count of sexual abuse by a parent, guardian, and/or custodian. Following the denial of his post-trial motions, the petitioner was sentenced to two terms of twenty-five to one hundred years in the penitentiary for his convictions of first-degree sexual assault; four terms of ten to twenty years in the penitentiary for his convictions of sexual abuse by a custodian; and two terms of five to twenty-five years in the penitentiary for his convictions of first degree sexual abuse. This Court affirmed the petitioner's convictions in *State v. Henry W.J.*, No. 16-0088, 2017 WL 383778 (W. Va. Jan. 27, 2017) (memorandum decision).[6]

In June 2022, the petitioner filed a petition for a writ of habeas corpus in the circuit court alleging, in relevant part, that his Sixth Amendment right of confrontation had been denied and that he had received ineffective assistance of counsel. With respect to his claim of ineffective assistance of counsel, the petitioner asserted that his counsel was ineffective by: (1) failing to object to the circuit court's decision to permit the victim to testify in such a manner so that she could not see the petitioner; and (2) failing to view pretrial discovery,

---

[5] The circuit court informed the petitioner's counsel that he "may sit over there in the corner, if he wants to." The circuit court further informed petitioner's counsel, "[y]ou can sit anywhere you like over there . . . . In fact, I'll even let you stand over there, if you would like to, but not leaning against the jury post." In response, counsel for the petitioner asked if he could stand in another part of the courtroom, and the circuit court responded that he could and that it was "fine." The circuit court also told the petitioner's counsel that he could move a chair and sit in the area that he requested.

[6] In his direct appeal, the petitioner did not advance a claim that the special seating arrangement for the victim violated his rights under the Confrontation Clause of the Sixth Amendment.

which the petitioner asserts would have prevented the jury from seeing the images of child pornography. With respect to the petitioner's claim that his right to confrontation had been denied, he asserted that he had been denied his "right to face to face confrontation with his accuser" when K.D. was permitted to testify with a monitor blocking her view of the petitioner.

On September 20, 2022, the circuit court held an omnibus hearing on the petition for writ of habeas corpus. Because the petitioner believed that his grounds for relief were "largely a legal argument," he only presented the testimony of his trial counsel.[7] Trial counsel agreed with habeas counsel's representation that the charges against the petitioner fell into two main areas: "[1]]sexual assaults of the child and [2]]child pornography" found on the petitioner's computer. Trial counsel did not recall much about the specifics of the trial, which had occurred almost seven years prior to his testimony. He had no independent recollection of the special seating arrangement that was used for K.D. absent documents that he reviewed. He "believed that [a] computer monitor was probably moved in such a way that [K.D.] did not have a direct line of view to [the petitioner]," but he had no memory of who would have moved the monitor. Although the petitioner would have been seated beside his trial counsel during trial, the petitioner's trial counsel did not know if the petitioner was able to see K.D. With respect to the child pornography charges, trial counsel believed that they were dismissed because of a *Brady* violation.[8] By order entered on February 9, 2023, the circuit court denied the petitioner's request for a writ of habeas corpus. This appeal followed.

Our review of the circuit court's order denying habeas relief is guided by the following standard:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006). We are also mindful that "[o]n an appeal to this Court the appellant bears the burden of showing that there was error in the proceedings below resulting in the judgment of which he complains, *all presumptions being in favor of the correctness of the proceedings and judgment in and of the trial court*." Syl. Pt. 2, *Perdue v. Coiner*, 156 W. Va. 467, 194 S.E.2d 657 (1973)

---

[7] At the outset of the omnibus hearing, the petitioner testified about his understanding of the claims that he was waiving. The petitioner did not testify about either assignment of error currently on appeal.

[8] *Brady v. Maryland*, 373 U.S. 83 (1963).

4

(emphasis added). Finally, "[a] habeas corpus proceeding is civil in nature wherein the petitioner bears the burden of proof by a preponderance of the evidence." *Frank A. v. Ames*, 246 W. Va. 145, 163 n.20, 866 S.E.2d 210, 228 n.20 (2021) (internal citation omitted). With these standards in mind, we turn to the petitioner's arguments.

In framing the appropriate standard of appellate review, we note that the petitioner could have and did not raise a violation of the Confrontation Clause in his direct appeal. We have found waiver under similar circumstances. West Virginia Code § 53-4A-1(c); Syl. Pt. 1, *Ford v. Coiner*, 156 W. Va. 362, 196 S.E.2d 91 (1972) ("Under the provisions of Chapter 53, Article 4A, Code of West Virginia, 1931, as amended, commonly known as 'Post-Conviction Habeas Corpus,' there is a rebuttable presumption that petitioner intelligently and knowingly waived any contention or ground in fact or law relied on in support of his petition for habeas corpus which he could have advanced on direct appeal but which he failed to so advance.") The petitioner does not offer any reason before this Court or to the habeas court to rebut the presumption of waiver. Further, the petitioner's habeas petition does not develop any allegations of ineffective assistance of appellate counsel in failing to raise the issue on direct appeal. The merits of his assignment of error that the Confrontation Clause was violated is thus beyond the scope of our review in this habeas proceeding. Still, to the extent the petitioner's habeas petition involves ineffective assistance of counsel for his trial counsel's failure to object to the special seating arrangement, the Confrontation Clause and attendant case law inform our analysis of counsel's performance under *Strickland/Miller*, which requires the petitioner to demonstrate: "(1) [c]ounsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Syl. Pt. 5, in part, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d at 114.[9]

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him[.]" U.S. Const. amend. VI; *see also* W. Va. Const. art. III § 14.

In support of this alleged constitutional violation, the petitioner challenges the fact that the monitor was positioned in front of K.D. during her testimony, and he also asserts that his trial counsel "could not see [K.D.] and had to jockey for position" during her testimony. Related to this assertion, the petitioner argues that if his trial counsel could not see K.D., then he could also not see her either. While the petitioner asserts that his trial

---

[9] The holding in *Miller* "incorporated the United States Supreme Court's similar test for ineffective assistance as articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and is therefore commonly referred to as '*Miller/Strickland*.'" *Sowards v. Ames*, 248 W. Va. 213, 227 n.17, 888 S.E.2d 23, 37 n.17 (2023).

counsel could not see K.D., the record does not support this argument. During the habeas hearing, trial counsel did not testify that he was unable to see K.D. Further, the petitioner testified during his criminal trial that he was able to observe K.D.'s demeanor and that she was "crying" when she came into the courtroom. In addition, the petitioner testified that he intentionally faced away from the victim.

Further, in support of his argument that his Confrontation Clause rights were violated, the petitioner relies upon the United States Supreme Court's decision in *Coy v. Iowa*, 487 U.S. 1012 (1988), in which the Court found that an appellant's right to face-to-face confrontation was violated by the use of a screen between the appellant and his minor victims. The petitioner argues that *Coy* "unequivocally prohibits placing a barrier between a defendant and a testifying witness, even an alleged child sexual assault victim." The State, however, points out that *Coy* left open the question of whether any exceptions exist to the right to face-to-face confrontation, and two years after the *Coy* decision, the United States Supreme Court answered this question when it confirmed that "a defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Maryland v. Craig*, 497 U.S. 836, 850 (1990) (citations omitted).

Notably, the Supreme Court made clear in *Craig* that it had "never held [] that the Confrontation Clause guarantees criminal defendants the *absolute* right to a face-to-face meeting with witnesses against them at trial." *Id.* at 844. Additionally, the Supreme Court concluded that "a State's interest in the physical and psychological well-being of child abuse victims may be sufficiently important to outweigh, at least in some cases, a defendant's right to face his or her accusers in court." *Id.* at 853. According to *Craig*,

> if the State makes an adequate showing of necessity, the state interest in protecting child witnesses from the trauma of testifying in a child abuse case is sufficiently important to justify the use of a special procedure that permits a child witness in such cases to testify at trial against a defendant in the absence of face-to-face confrontation with the defendant.

*Id* at 855. Because the finding of necessity is case specific, *Craig* directs a trial court to "hear evidence and determine whether the use of [a procedure other than face-to-face confrontation][10] is necessary to protect the welfare of the particular child witness who seeks to testify." *Id.* The trial court must "find that the child witness would be traumatized, not

---

[10] The procedure at issue in *Craig* was Maryland's statutory procedure that permitted a child sex abuse victim to testify by closed circuit television rather than face-to-face with the defendant upon a finding that in-person testimony would result in "serious emotional distress" to the victim.

by the courtroom generally, but by the presence of the defendant." *Id.* at 856. "Finally, the trial court must find that the emotional distress suffered by the child witness in the presence of the defendant is more than *de minimis, i.e.*, more than 'mere nervousness or excitement or some reluctance to testify.'" *Id.* (internal citations omitted). As one court summarizing *Craig* explained,

> [a]n alternative arrangement is permissible as long as the arrangement is in furtherance of an important public policy – such as the protection of minors who have been victimized by sexual predators – and the reliability of the testimony is otherwise assured. Even so, the trial court must make individualized, case-specific findings, and, in doing so, must address the particular child's susceptibility to the particular defendant.

*Ellis v. U.S.*, 313 F.3d 636, 650 (1st Cir. 2002) (internal citations omitted).

In addition to showing necessity, *Craig* also requires that the reliability of the testimony at issue be otherwise assured. "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Id.* at 845. The purposes of the Confrontation Clause are served by the "combined effect of the[] elements of confrontation – physical presence, oath, cross-examination, and observation of demeanor by the trier of fact[.]" *Id.* at 846 (internal citations omitted).

With the background of the protections afforded by the Confrontation Clause under similar circumstances, we turn to the petitioner's claim that the court wrongly rejected his claim of ineffective assistance of counsel based upon his trial counsel's failure to object to the alleged violation of his Confrontation Clause rights due to the victim's testimony behind the monitor.

"[T]he cases in which a defendant may prevail on the ground of ineffective assistance of counsel are few and far between one another." *State v. Miller*, 194 W. Va. 3, 16, 459 S.E.2d 114, 127 (1995). As noted *supra*, to prevail on this claim, the petitioner is required to demonstrate: "(1) [c]ounsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 6, 459 S.E.2d at 117, Syl. Pt. 5, in part.[11] We ask, first, whether trial counsel provided

---

[11] "This holding incorporated the United States Supreme Court's similar test for ineffective assistance as articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and is therefore commonly referred to as (continued . . .)

objectively-deficient representation in failing to object to what the petitioner deems an obvious violation of the Confrontation Clause.[12] *Id.* Then, we must analyze whether the alleged prejudice resulting from the error was such that there is a reasonable probability that the outcome would have been different. *Id.*

When analyzing the deficiency of counsel's performance, we are guided by the following standard:

> In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

*Id.* at 6-7, 459 S.E.2d at 117-118, Syl. Pt. 6.

During the habeas proceeding, the petitioner's trial counsel acknowledged that he did not formulate a strategy before trial that he would acquiesce to the victim testifying behind a monitor. He simply did not object to the special seating arrangement. We agree with the circuit court that, under certain circumstances, there could be valid reasons an attorney might seek to avoid the optics of objecting to a testimonial set up intended to make a child victim more comfortable testifying. Regardless, we find the second prong of *Strickland/Miller* to be dispositive because the petitioner has not demonstrated prejudice.

*Coy*, albeit in the context of a harmless error analysis, identifies that violations of the Confrontation Clause do not lead inexorably to reversible error, but are analyzed for prejudice by assessing the relative weight of the other evidence offered by the State:

> An assessment of harmlessness cannot include consideration of whether the witness' testimony would have been unchanged, or the jury's assessment unaltered, had there been confrontation; such an inquiry would obviously involve

---

'*Miller/Strickland.*'" *Sowards v. Ames*, 248 W. Va. 213, 227 n.17, 888 S.E.2d 23, 37 n.17 (2023).

[12] Because the petitioner has waived his challenge to the Confrontation Clause as set forth above, nothing in this decision is intended to pass judgment on whether the underlying proceedings in fact violated the Confrontation Clause.

pure speculation, and harmlessness must therefore be determined on the basis of the remaining evidence.

*Coy*, 487 U.S. at 1021-1022.

The petitioner argues that he was prejudiced for his inability to confront the victim face-to-face. He argues that the victim's testimony was uncorroborated. In addition, he argues that the expert's testimony that the vaginal transection she opined could only have been caused by trauma, could have been caused by sexual activity with the victim's peers. Initially, we observe that the petitioner testified that he intentionally turned away from the victim during her testimony. Further, the victim's testimony was not uncorroborated. The victim's cousin and step-mother testified about disclosures the victim made to them regarding the abuse she endured by the petitioner. To the extent that the petitioner argues that the expert testimony was amenable to alternate interpretations and explanations, we note that "[t]he jury [] determines the weight to be given to [an] expert's opinion." Syl. Pt. 4, in part, *Mayhorn v. Logan Med. Found.*, 193 W. Va. 42, 454 S.E.2d 87 (1994). The petitioner has failed to demonstrate how the alleged violation of his right to face-to-face confrontation of the victim adversely impacted his defense. Accordingly, we conclude that the petitioner failed to carry his substantial burden to prevail on the ground of ineffective assistance of counsel as to this claim.

The petitioner also contends that he received ineffective assistance of counsel at trial when his "trial counsel made a deliberate choice not to view favorable pretrial discovery." "When a defendant makes a claim of ineffective assistance of counsel, to satisfy the first *Strickland/Miller* prong, he or she must identify the specific 'act or omissions' of counsel believed to be 'outside the broad range of professionally competent assistance.'" *Meadows v. Mutter*, 243 W. Va. 211, 219, 842 S.E.2d 764, 772 (2020) (internal citation omitted). At the outset of our analysis, we note that the petitioner's claim refers generally to his trial counsel's failure to view favorable "pretrial discovery." There is no indication that the petitioner's trial counsel failed to review all of the pretrial discovery. Instead, the petitioner references a CD. According to the petitioner, if his trial counsel had reviewed the CD prior to trial, he would have discovered that no extraction report had been performed on the hard drives, and arguably, he would have been able to have the unlawful possession charges dismissed before the photographs were viewed by the jury. We disagree.

It is undisputed that the child pornography images were published to the jury prior to the dismissal of the unlawful possession charges. However, it is also clear that counsel for the petitioner zealously defended his client against these charges through his cross-examinations of the investigating officer and the digital forensic analyst. Indeed, such examination revealed that the extraction report petitioner sought had never been created. The petitioner relies upon the State's argument *at trial* that if counsel for the petitioner had accepted the State's offer to view the evidence on a CD prior to trial, the petitioner would

have discovered at that time that no extraction report had been created for the hard drives.[13] However, counsel for the petitioner had repeatedly requested the data underlying a three page report regarding what was found on the computers.

In response to the State's assertion that it made everything it had available to counsel for the petitioner, the circuit court explained that counsel for the petitioner had been under the impression that an extraction report had been created for the computers that contained the images when no such report had been prepared. In dismissing the unlawful possession charges, the circuit court informed the State that it had "an obligation to provide potentially exculpatory information and [it] did not."

During the omnibus hearing, trial counsel testified that he did not "have any specific recollection of [this discovery] issue." He speculated that if he declined "to view the trial pornography," he would have done so because he "believed [the petitioner] had a right to review the evidence; and if he was not going to be allowed to review the evidence, it was pointless for [trial counsel] to review it." When asked if he believed that he would have discovered that the State had not preserved the metadata if he had reviewed the discovery, he testified that he did not know.

We have held that:

> In determining whether counsel's conduct falls within the broad range of professionally acceptable conduct, this Court will not view counsel's conduct through the lens of hindsight. Courts are to avoid the use of hindsight to elevate a possible mistake into a deficiency of constitutional proportion. Rather, under the rule of contemporary assessment, an attorney's actions must be examined according to what was known and reasonable at the time the attorney made his or her choices.

Syl. Pt. 4, *State ex rel. Daniel v. Legursky*, 195 W. Va. 314, 465 S.E.2d 416 (1995). "The test of ineffectiveness has little or nothing to do with what the *best* lawyers would have done. Nor is the test even what most good lawyers would have done." *Miller* 194 W. Va. at 16, 459 S.E.2d at 127. Further, "we are not interested in grading lawyers' performances; we are interested in whether the adversarial process at the time, in fact, worked adequately." *Id.*

Although the petitioner alleges that his trial counsel "deliberately" chose not to view favorable pretrial discovery, after the parties learned that an extraction report had not been

---

[13] Following the conclusion of the trial, the State acknowledged in its response to the petitioner's post-trial motions that "*[d]uring trial, it became clear that the lab did not generate a full extraction report of [the petitioner's] hard drive(s)*[.] (emphasis added)."

created, counsel for the petitioner successfully moved to have the unlawful possession charges dismissed, and a curative instruction was given to the jury. *See Henry W.J.*, 2017 WL 383778, at *3-4.[14] For the foregoing reasons, we find that the petitioner's trial counsel acted in an objectively reasonable manner and, therefore, the petitioner failed to meet the first prong of the *Strickland/Miller* test.[15] Accordingly, the petitioner is entitled to no relief as to this claim.

For the reasons set forth above, we affirm the denial of habeas corpus relief. Accordingly, the February 9, 2023 order of the Circuit Court of Kanawha County denying the petitioner's petition for writ of habeas corpus is affirmed.

Affirmed.

**ISSUED:** May 14, 2025

---

[14] The issue involving this evidence and the extraction report was raised by the petitioner on direct appeal in regard to the curative instruction that was given. The Court ultimately found that the petitioner had waived any error regarding the instruction and declined to afford any relief on that issue. *See Henry W.J.*, 2017 WL 383778, at *3-4.

[15] "In deciding ineffective of [sic] assistance claims, a court need not address both prongs of the conjunctive standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984), and *State v. Miller,* 194 W. Va. 3, 459 S.E.2d 114 (1995), but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test." Syl. Pt. 5, *State ex rel. Daniel v. Legursky*, 195 W. Va. 314, 465 S.E.2d 416 (1995).

Even if the petitioner had met the first prong of the *Strickland/Miller* test, he cannot establish the second prong of that test that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Miller*, 194 W. Va. at 6, 459 S.E.2d 117, Syl. Pt. 5, in part. In this regard, we believe that the petitioner failed to prove that, had defense counsel viewed the discovery prior to trial and prevented the pictures publication to the jury, there is a reasonable probability that the result of his trial would have been different.

**CONCURRED IN BY**:

Chief Justice William R. Wooton
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn
Justice Charles S. Trump IV